636 So.2d 523 (1993)
FIRST UNION NATIONAL BANK OF FLORIDA AND Brevard County, a political subdivision of the State of Florida, Appellants,
v.
Jim FORD, Property Appraiser, Appellee.
No. 92-2022.
District Court of Appeal of Florida, Fifth District.
September 10, 1993.
Rehearing Denied October 19, 1993.
Robert D. Guthrie, County Atty., and Nina Boniske and Kenneth C. Crooks, Asst. County Attys., Office of Brevard County Atty., Melbourne, for appellants.
Joe Teague Caruso of Law Offices of Joe Teague Caruso, P.A., Merritt Island, for appellee.
W. SHARP, Judge.
First Union National Bank of Florida and Brevard County appeal from a final judgment denying the Bank an exemption from ad valorem taxes for real estate and improvements constructed on it, for the years 1990 and 1991. The realty is titled in the Bank, leased to the County, and used by the County as its primary governmental and administrative offices. The trial court ruled that the County only had a leasehold interest in the property and was not its "equitable owner." Therefore, the Bank, which holds legal title to the property, could be assessed ad valorem taxes on the realty and improvements since it is not an exempt entity pursuant to section 196.192(1). That statute provides:
Subject to the provisions of this chapter:
(1) All property owned by an exempt entity and used exclusively for exempt purposes shall be totally exempt from ad valorem taxation.
We disagree and reverse.
The facts in this case are not in dispute. The parties conducted a nonjury trial pursuant to a joint stipulation as to the parties' rights and obligations concerning the property, *524 and the pertinent documents which created them.[1] In summary, the County engaged in a financing arrangement whereby individual investors purchased certificates of participation to raise sufficient funds to build a center in which to house its county government offices.[2] The real property in this lawsuit was donated by the prior owner. The center has been completed and is being used exclusively for County government functions.
Until the individual certificate holders are reimbursed for their principal investments, plus interest, the property is subject to a complicated trust and lease arrangement. Title to the land is held by the Bank and the Bank acts as trustee for the individual investors. All rent payments made by the County pursuant to the lease with the Bank, are paid to the Bank, solely for the benefit of the individual investors. The Bank pays the individual investors prorated principal and interest twice annually.
The Bank was paid a one time fee of $50,000 for acting as the trustee in this arrangement. However, if the lease is terminated prior to the projected twenty-five year period, a prorate part of the $50,000 will be refunded to the County. Any expenses in servicing the certificate holders are to be paid by way of supplemental rent payments. Any sums received by the Bank in excess of funds owed to the certificate holders belongs to the County.
The lease term runs from year to year, but unless terminated, it is automatically renewed until 2014, when it will expire. That is the date the certificate holders will be paid in full on the projected payout basis. At that time, the Bank must convey legal title to the property in fee to the County.
The lease also provides that if the County fails to appropriate funds to pay rent or if it fails to comply with its other obligations under the lease, the Bank must sell the property or relet it, and use all of the proceeds to pay the certificate holders. If there is any excess, the balance must be paid to the County. The County also has the option, pursuant to the lease, to prepay the sums owed the certificate holders. The Bank must then convey title to the County.
The lease also provides that the property will be occupied and used by the County solely for County governmental purposes. The County has the sole obligation to maintain the property and buildings, and to provide insurance for the improvements. It also is liable for all taxes (if any are due and payable) on the property.
Based on our analysis of the trust and lease involved in this case, we conclude that the County has retained sufficient rights and duties regarding the realty and its improvements, to make it the equitable owner. We disagree with the trial court that the $50,000 payment to the Bank, or the interest payable to the certificate holders over the projected twenty-five year period, makes the Bank the owner of this property for any purpose other than holding bare legal title. Pursuant to this lease and trust, neither the Bank nor the certificate holders have a right nor prospect of ever occupying or using the land and buildings. Even a mortgagee who has the right to foreclose on mortgaged property, has more rights than do the Bank and certificate holders in this case.
All the certificate holders can hope for is recovery of their principal investment plus interest, which was not demonstrated below as being excessive, based on current money-markets. All the Bank can hope to receive is a fee for acting as trustee over a twenty-five year period, which also was not shown by the record below to be excessive for the services projected to be rendered over that time period. At trial it was established that the County accepted bids from other financial institutions to serve as trustee, pursuant to this arrangement, and the Bank's was the best offer received.
*525 In Florida, we have found no appellate decisions concerning the ad valorem taxation of real estate and improvements subject to a similar lease-trust arrangement. However, two recent out-of-state cases involving similar situations support our conclusion in this case. See Mayhew Tech Center, Phase II v. County of Sacramento, 4 Cal. App. 4th 497, 5 Cal. Rptr.2d 702 (1992); Texas Department of Corrections v. Anderson County Appraisal District, 834 S.W.2d 130 (Tex. App. 1992). Both cases hold that the states retained equitable ownership of the real estate and improvements and they were not subject to ad valorem taxation. The improvements on the properties in both cases had been built with funds raised from certificate holders or investors, and the title to the property was vested in private, for-profit corporations. In the Texas case, the state built a prison and leased it back to use as a state prison. In the California case, the state built, leased and occupied a facility for the Franchise Tax Board in Sacramento.
The court concluded in Mayhew that most of the property rights regarding the property and improvements were vested in the state, as they would have been in a normal purchase financed by a loan and secured by a deed of trust.
In other words, any equity in the property belongs to the State. As in a conditional sale setting, the State holds beneficial ownership both in a practical and legal sense because it has possession and use of the property to the complete exclusion of all others, subject only to its own default and the remedies which would result.
Mayhew, 5 Cal. Rptr.2d at 706. Both cases conclude that the state should be treated as the taxable owner of the properties, and as such, is immune from taxation under the respective applicable state constitutions.
Appellee property appraiser argues that Mayhew and Anderson do not provide us with solid precedent in this case because they were decided with reference to specific and unique state constitutional provisions without parallel in Florida. However, Article VIII, section 1(a) of the Florida Constitution (1968) provides: "The state shall be divided by law into political subdivisions called counties." As was true under Florida's prior constitutions, counties are considered to be parts of the state. As such, it has long been established by case law that they are immune from state, municipal, or other special districts' attempts to tax them. See Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla. 1975); Hillsborough County Aviation Authority v. Walden, 210 So.2d 193 (Fla. 1968); State ex rel. Charlotte County v. Alford, 107 So.2d 27 (Fla. 1958); Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957); Orange County, Fla. v. Florida Department of Revenue, 605 So.2d 1333 (Fla. 5th DCA 1992), result approved, 620 So.2d 991 (Fla. 1993); Sarasota-Manatee Airport Authority v. Mikos, 605 So.2d 132 (Fla. 2d DCA 1992), rev. denied, 617 So.2d 320 (Fla. 1993). Cf. Lewis v. The Florida Bar, 372 So.2d 1121 (Fla. 1979); 50 Fla.Jur.2d Taxation § 3:35. Absent a waiver in the state constitution itself, which does not exist, counties do not need to qualify for statutory tax exemptions pursuant to Chapter 196, because the legislature lacks the power to tax them by passing statutes.
Appellee also argues that the concept of equitable ownership for tax purposes should not be applied to counties, and that the presumption of inclusion of all property in the state as subject to taxation should be applied here. We reject both propositions. The concept of taxing the equitable owners of real property in Florida rather than the holder of the bare legal title is well-established. See Bancroft Investment Corp. v. City of Jacksonville, 157 Fla. 546, 27 So.2d 162 (1946); Mikos v. King's Gate Club, Inc., 426 So.2d 74 (Fla. 2d DCA 1983); 50 Fla.Jur.2d Taxation (1983); Op.Atty.Gen. 073-152 (1973). It is just and equitable to apply that doctrine in an appropriate case, whether the result is to uphold or to overturn the tax. If only applied so as to result in taxation of property, that would redound to the detriment of the state, its subdivisions and agencies, and counter the principal of favoring tax immunity of the state when taxation of its property is at issue in a case. See Mayhew; Taxas Department of Corrections. To the contrary, the general rule is that property belonging to the state is presumed to be immune from taxation unless there is a clear *526 manifestation of intent to tax it. 84 C.J.S. Taxation § 200 p. 386.
Appellee relies on two recent cases decided by our sister court, Ocean Highway and Port Authority v. Page, 609 So.2d 84 (Fla. 1st DCA 1992) and Mastroianni v. Memorial Medical Center of Jacksonville, Inc., 606 So.2d 759 (Fla. 1st DCA 1992), for the proposition that in order for property to be exempt from taxation, it must be both owned by an exempt entity and used for exempt purposes. § 196.192(1). In Mastroianni, a hospital (a non-profit organization exempt from taxation under Chapter 196) sold hospital units to for-profit partnerships. The partnerships leased the property back to the hospital, and they were used as part of the hospital. In Mastroianni, the court did not consider whether the hospital retained equitable ownership of the leased premises. But, the court emphasized that only the legal title holder (however bare) could apply for a tax exemption and thus, inferred that an equitable-owner would have no standing or right to apply for a tax exemption.
In Ocean Highway, a similar fact pattern was involved. A tax exempt body (a Port Authority) built improvements on real property it leased from private corporations. It was used by the Port Authority for governmental purposes, but because private for-profit entities owned the property, the court held the property was subject to ad valorem taxation. As in Mastroianni, the court did not consider whether the Port Authority retained equitable ownership of the property under the lease. It held that to be entitled to the tax exemption under section 196.192, a tax exempt entity had to be the owner as well as the user and occupant of the property.
We do not think these cases are on point. As explained above, they were decided pursuant to section 196.192(1) and not section 196.199(1)(b), which appellants argue should be applied in this case. Section 196.199 provides:
(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
* * * * * *
(b) All property of this state which is used for governmental purposes shall be exempt from ad valorem taxation except as otherwise provided by law.
An argument could be made that the phrase "all property of this state which is used for governmental purposes ..." includes beneficial ownership, even if as interpreted by the first district, section 196.192(1) only exempts property titled in an exempt entity.
An additional distinction is that section 196.192 applies to tax exempt entities such as nonprofit hospital corporations, as in Mastroianni, and a Port Authority created by a special act, as in Ocean Highway, and not to political subdivisions of the state, such as counties, as in this case. As noted above, counties are immune from state taxation, and do not need to be exempted by statutes.
The trial court cited Straughn v. Camp, 293 So.2d 689 (Fla.), appeal dismissed, 419 U.S. 891, 95 S.Ct. 168, 42 L.Ed.2d 135 (1974), as controlling in this case. We disagree. Straughn upheld the taxation of a private lessee's leasehold interest, pursuant to a statute which made leaseholds taxable when the lessee did not use the property for a governmental or public purpose.[3] This statute was apparently designed to remedy the deficit in Florida's taxing scheme pointed out in Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957). See Hillsborough County Aviation Authority v. Walden, 210 So.2d 193 (Fla. 1968); Sarasota-Manatee Airport Authority v. Mikos, 605 So.2d 132 (Fla. 2d DCA 1992), rev. denied, 617 So.2d 320 (Fla. 1993); Orlando Utilities Commission v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969), cert. denied, 237 So.2d 539 (Fla. 1970). However, in this case, the lessee is the County, taxation of the County's leasehold interest is not involved, and the property is exclusively used for governmental purposes.
Although not directly applicable to the facts in this case, cases decided pursuant to section 196.199(2)(a) add collateral support for our conclusion that in determining the *527 taxability of property in this state, courts should look through form to the substance of who is the beneficial owner of the property. In Parker v. The Hertz Corp., 544 So.2d 249 (Fla. 2d DCA 1989), the lessee, Hertz, challenged the assessment of ad valorem taxes on the improvements Hertz had built and was using in its car rental business. It had leased the real property from the Aviation Authority at the Tampa Airport. The court upheld the tax because it concluded, after reviewing the lease provisions, Hertz had "sufficient indicia of ownership" of the improvements to make it the beneficial owner, and thus subject to taxation.
Similarly, in Page v. Fernandina Harbor Joint Venture, By and Through Fernandina Marina Investors, Ltd., 608 So.2d 520 (Fla. 1st DCA 1992), rev. denied, 620 So.2d 761 (Fla. 1993), the court considered the "bundle of rights" provided for in the lease between a private lessee and a city to determine which was the beneficial owner of the improvements. They had been built by the lessee on real property titled in the city's name. It concluded the city was the owner of the improvements and because they were leased to a private entity and used for a public purpose, they were exempt from taxation pursuant to section 196.199(2)(a).
In a sense, this case is the reverse or mirror image of Hialeah, Inc. v. Dade County, 490 So.2d 998 (Fla. 3d DCA), rev. denied, 500 So.2d 544 (Fla. 1986). In Hialeah, the city was the lessor and the lessee was a for-profit corporation. The lessee held a thirty-year lease of a race track and facility, to which the city held legal title. To finance acquisition of the property and make improvements, the city sold revenue notes secured by mortgages on the property. Pursuant to the lease, the lease payments were to be applied to pay the notes, and the lessee was required to pay all the taxes and expenses of the property. The lessee also had to pay off all of the debt represented by the notes without regard to whether or not the property was condemned. Any excess over the debt would be paid to the lessee and when the lessee satisfied the debt, the property would be conveyed to it for payment of an additional nominal sum ($100.00).
The court concluded that pursuant to this lease and financing arrangement, the lessee was the beneficial owner of the property. The city held title merely as security for the debt. All the burdens and obligations of ownership were vested in the lessee. Thus, the court held that the property could be taxed in full and not merely the lessee's leasehold interest, as intangible personal property.
In the instant case, the County holds substantially all the burdens and benefits of ownership relating to the property sought to be taxed. The Bank, like the city in Hialeah, holds merely the bare legal title to the land and improvements as security for the debt owed to the certificate holders. It cannot be taxed for any interest in the government center because it does not have any beneficial ownership interest in the land or the improvements. And it has no leasehold interest subject to tax pursuant to section 196.199(2).
In summary, we hold that the County is the beneficial owner of the real property and improvements sought to be taxed in this case. As such, it is immune from taxation both as owner and as lessee. Accordingly, we reverse and remand the cause for further proceedings consistent with this opinion.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
DIAMANTIS, J., concurs in result only, without opinion.
NOTES
[1] These documents include the Owner Trust Agreement, Lease Agreement With Option to Purchase, Certificate Trust Agreement, Certificate of Participation and Development Agreement.
[2] Under this financing arrangement, the County did not have to pledge specific revenue sources as it would for a traditional bond issue. This kept the County bond rating high and resulted in the County having to pay a lower interest rate on the certificates of participation than had bonds been issued.
[3] § 196.199(2)(a), Fla. Stat. (1971).