698 So.2d 526 (1997)
LEON COUNTY EDUCATIONAL FACILITIES AUTHORITY, et al., Petitioners,
v.
Bert HARTSFIELD, etc., Respondent.
No. 87769.
Supreme Court of Florida.
June 12, 1997.
Rehearing Denied August 18, 1997.
Kenza van Assenderp and Andrew I. Solis of Young, van Assenderp & Varnadoe, Tallahassee, and Richard E. Benton, Tallahassee, for Petitioners.
Ricky L. Polston of Radey, McArthur, Polston & Frehn, Tallahassee, for Respondent.
Larry E. Levy and Loren E. Levy of the Levy Law Firm, Tallahassee, for Honorable David H. Goolsby, Jr., Hamilton County Property Appraiser and as President of the Property Appraisers' Association of Florida, Amicus Curiae.
Robert L. Nabors, Sarah M. Bleakley and Kimberly L. Franklin of Nabors, Giblin & Nickerson, P.A., Tallahassee, and James G. Yaeger, Lee County, County Attorney, Fort Myers, for Lee County, Amicus Curiae.
Elliott Messer, Albert T. Gimbel and Kimberly L. King of Messer, Caparello, Madsen, *527 Goldman & Metz, P.A., Tallahassee, for Chris Jones, Escamiba County Property Appraiser, Amicus Curiae.
C. Allen Watts of Cobb, Cole & Bell, Daytona Beach, for the School Board of Volusia County, Amicus Curiae.
William J. Roberts, General Counsel, Florida Association of Counties, Inc., Tallahassee, and Jorge Fernandez, President, Florida Association of County Attorneys, Inc., Sarasota, for the Florida Association of Counties, Inc. and the Florida Association of County Attorneys, Inc., Amici Curiae.
GRIMES, Justice.
We review Leon County Educational Facilities Authority v. Hartsfield, 669 So.2d 1105 (Fla. 1st DCA 1996), in which the court certified conflict with First Union National Bank v. Ford, 636 So.2d 523 (Fla. 5th DCA 1993). We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Leon County Educational Facilities Authority (Authority) is a public corporate body established by the Board of County Commissioners of Leon County pursuant to chapter 243, part II, Florida Statutes (1989). The Authority is empowered to own, lease, and finance higher educational facilities. The Authority determined to operate a dormitory and food service project (project) for the purpose of serving the students at Florida State University, Florida A & M University, and Tallahassee Community College. SRH, Inc. (SRH), a nonprofit Florida corporation, was established solely for the purpose of facilitating the financing, acquisition, construction, and equipping of the project. The Authority entered into a lease with option to purchase agreement with SRH under which SRH as the lessor would acquire, construct, and equip the project and lease it to the Authority in exchange for periodic rental payments. Financing was obtained through the issuance of certificates of participation (COPS) to investors who would obtain a fractional interest in the rentals payable under the lease after the payment of certain expenses. The interest received by the COPS holders is excludable from the gross income for federal income tax purposes. Any net proceeds in excess of the amounts owed the COPS holders would be paid to the Authority. The lease specifies that the Authority shall be responsible for maintenance and insurance on the project and shall pay any taxes which may be assessed against the project. The lease further provides that upon payment in full to the COPS holders, the Authority could purchase the project for one dollar.
The project received a tax exemption in 1992. However, in 1993, the Leon County property appraiser denied the application for a tax exemption. The Authority and SRH sued the property appraiser for declaratory relief. The parties entered into a stipulation of facts and filed cross-motions for summary judgment. The trial judge entered summary judgment in favor of the property appraiser and dismissed the complaint with prejudice.
The First District Court of Appeal affirmed the summary judgment based upon its interpretation of sections 196.192 and 196.199, Florida Statutes (1991). These statutes read in pertinent part as follows:
196.192 Exemptions from ad valorem taxation.
Subject to the provisions of this chapter:
(1) All property owned by an exempt entity and used exclusively for exempt purposes shall be totally exempt from ad valorem taxation.
....
For purposes of this section, each use to which the property is being put must be considered in granting an exemption from ad valorem taxation, including any economic use in addition to any physical use. This section shall not apply in determining the exemption for property owned by governmental units pursuant to s. 196.199.
....
196.199 Government property exemption.
(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
....
(b) All property of this state which is used for governmental purposes shall be *528 exempt from ad valorem taxation except as otherwise provided by law.
(c) All property of the several political subdivisions and municipalities of this state or of entities created by general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit corporation which would revert to the governmental agency, which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law.
(Emphasis added.)
The court reasoned that under these statutes the Authority was not entitled to the exemption because legal title to the project was vested in SRH. The court buttressed its conclusion by noting that prior to 1988, section 196.192(1) read: "All property used exclusively for exempt purposes shall be totally exempt from ad valorem taxation." In 1988, the legislature amended subsection (1) to read: "All property owned by an exempt entity and used exclusively for exempt purposes shall be totally exempt from ad valorem taxation."
Because the Authority is using the project for the purposes authorized by chapter 243, part II, it argues that the project is entitled to a tax exemption under section 243.33, which reads as follows:
243.33 Tax exemption.The exercise of the powers granted by this part will be in all respects for the benefit of the people of this state, for the increase of their commerce, welfare and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of a project by the authority or its agent will constitute the performance of an essential public function, neither the authority nor its agent shall be required to pay any taxes or assessments upon or in respect of a project or any property acquired or used by the authority or its agents under the provisions of this part or upon the income therefrom, and any bonds issued under the provisions of this part, their transfer, and the income therefrom, including any profit made on the sale thereof, shall at all times be free from taxation of every kind by the state, the county and by the municipalities and other political subdivisions in the state. The exemption granted by this section shall not be applicable to any tax imposed by chapter 220 on interest, income or profits on debt obligations owned by corporations.
The court below did not address this statute in its opinion.
The Authority also relies upon the opinion in Ford in which the Fifth District Court of Appeal concluded under circumstances much like the instant case that the property at issue could not be taxed. In Ford, a bank held legal title to the property but leased it to the county for use as its primary governmental and administrative offices. Like the instant case, the buildings were financed through the issuance of COPS. The rental payments made by the county were used to pay the COPS holders. The bank was paid a one-time fee of $50,000 for acting as the trustee in this arrangement. All sums received by the bank in excess of those necessary to retire the COPS were returned to the county. At the conclusion of the lease, the bank was required to convey legal title of the property to the county. The court rejected the property appraiser's argument that the property could be taxed because the county did not hold legal title. The court reasoned that because all of the burdens and obligations of ownership were vested in the county, the county was the beneficial owner of the property and thereby entitled to tax relief.
The concept of equitable ownership in ad valorem taxation has long been a part of Florida law. In Bancroft Investment Corp. v. City of Jacksonville, 157 Fla. 546, 27 So.2d 162 (1946), this Court held that property titled in the name of the United States government was nevertheless subject to ad valorem taxation because the property was being used by a private entity for nonexempt purposes under a contract for sale. In responding to the argument that the applicable statute specified that all property of the United States should be exempt from taxation, the Court said:
Appellant rests its thesis on a literal interpretation of the quoted statute defining *529 exemptions, but this court is not limited to that. It is authorized to look through form to fact and substance to answer the question of tax exemption or tax liability. 5 Am.Jur. Sec. 409. If the positive law (constitution or statute) does not give a direct answer to the question, the court is at liberty on the factual basis to indulge the rule of reason to reach a result consonant with law and justice.
Id. at 562, 27 So.2d 162.
In Hialeah, Inc. v. Dade County, 490 So.2d 998 (Fla. 3d DCA), review denied, 500 So.2d 544 (Fla.1986), the City of Hialeah, which had obtained title to the property from Hialeah, Inc., leased it back to the corporation for purposes of conducting thoroughbred horse racing on the property. If racing was discontinued, the leasehold would be terminated. The corporation had the option to purchase the city's fee simple interest upon satisfaction of the city's mortgage debt and a further payment of $100. The court held that the property could be taxed because the corporation was the beneficial owner of the property. See Mikos v. King's Gate Club, Inc., 426 So.2d 74 (Fla. 2d DCA 1983) (where members of a nonprofit mobile home park corporation held equitable title to land upon which their mobile homes were affixed, their interests in the sites constituted "ownership," rendering the mobile homes taxable as real property).
Fairness dictates that the doctrine of equitable ownership should be applied evenhandedly regardless of whether a tax is being imposed or an exemption is being claimed. Indeed, in the instant case the property appraiser has never argued that legal title is an absolute prerequisite to a tax exemption. In fact, in the stipulation of the parties, the property appraiser acknowledged that in the event the Authority is determined to have been the equitable owner of the project, that portion of the project used for exempt purposes would be exempt from ad valorem taxation. Throughout the litigation, the property appraiser has simply asserted that under the stipulated facts the Authority was not the equitable owner of the project. Contrary to the reasoning of the court below, we believe that the issue in this case turns on whether the Authority has equitable ownership of the project.
Upon consideration of the stipulated record and the undisputed facts, we are convinced that the project is exempt from taxation because the Authority is the equitable owner.[1] At the outset, we note that among the powers given to the Authority, it is authorized to lease property as a lessee or lessor. § 243.22(5)(a), Fla. Stat. (1991). Moreover, the language of section 243.33 is broadly stated. The clear intent of the statute is to exempt from taxation a project being operated and maintained by an authority under the provisions of chapter 243, part II, Florida Statutes. It is unlikely that the legislature intended that property being used by the Authority for its authorized purpose should be denied a tax exemption solely because it does not hold bare legal title. The only reason legal title is held by SRH is to facilitate the financing of the project. In essence, SRH is a conduit through which the lease payments are used to repay the COPS holders. Under the lease, SRH can make no profit on the project. The fact that legal title to the project does not automatically pass to the Authority upon the termination of the lease as in Ford is not significant in this instance where the Authority can acquire title by paying the nominal consideration of one dollar.
The two cases relied upon by the court below are distinguishable. In Mastroianni v. Memorial Medical Center of Jacksonville, Inc., 606 So.2d 759 (Fla. 1st DCA 1992), a nonprofit hospital exempt from taxation sold units of its hospital to for-profit partnerships which leased the units back to the hospital for use as part of the hospital. In Ocean Highway & Port Authority v. Page, 609 So.2d 84 (Fla. 1st DCA 1992), three for-profit corporations leased property to the tax-exempt port authority, which operated a port *530 on the leased land. There was no assertion in either of these cases that the exempt entities were the equitable owners of the property. Consequently, these cases were properly decided on the unremarkable basis that privately owned property is not entitled to a tax exemption solely because it is leased to a governmental entity for a governmental use.
We cannot agree that the 1988 amendment which added the words "owned by an exempt entity" to section 196.192(1) precludes the Authority from obtaining a tax exemption. The Senate Staff Analysis reflects that this amendment was intended to overrule the effect of such cases as Daniel v. T.M. Murrell Co., 445 So.2d 587 (Fla. 2d DCA 1984), which held that use rather than ownership of the property controlled the granting of a tax exemption. Daniel was a case like Mastroianni in which a private party had leased property to an exempt entity. We do not believe that in enacting the 1988 amendment to section 196.192(1), the legislature intended to preclude an equitable owner who otherwise qualified from receiving a tax exemption.
We also reject the suggestion that the granting of a tax exemption for the project is precluded by section 196.011(1), Florida Statutes (Supp. 1992), which reads in pertinent part as follows:
Every person or organization who, on January 1, has the legal title to real or personal property, except inventory, which is entitled by law to exemption from taxation as a result of its ownership and use shall, on or before March 1 of each year, file an application for exemption with the county property appraiser, listing and describing the property for which exemption is claimed and certifying its ownership and use.
(Emphasis added.) The term "which is entitled" refers not to the person or entity applying for the exemption but to the real or personal property that is the subject of the exemption application. In this case, both SRH and the Authority applied for the exemption. The fact that this section is the only place in chapter 196 which refers to legal title actually lends support to our conclusion that the owner of property for the purpose of obtaining a tax exemption can be one who has been determined to be an equitable owner.
Our holding in this case should not be construed to mean that one who leases property from another becomes the equitable owner of the property if the lease contains an option to purchase. To the contrary, this Court has long held that the status of parties to the ordinary lease with an option to purchase remains that of landlord and tenant until the option is exercised and that the lessee has no equitable interest in the property. Gautier v. Lapof, 91 So.2d 324 (Fla. 1956). We hold only that under the stipulated facts of this case, the project is not subject to ad valorem taxation because the Authority holds virtually all the benefits and burdens of ownership.
We approve the decision in Ford and quash the decision below. However, in the stipulation, the tax appraiser reserved certain issues for further disposition in the event the Authority was determined to be the equitable owner. Therefore, we remand the case for resolution of these issues.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] We reject the Authority's ancillary argument that the project is expressly exempt from taxation under section 196.199(1)(c). A careful reading of that statute shows that it clearly contemplates an arrangement whereby the property which was originally titled in the governmental agency was conveyed to a nonprofit corporation but subject to later reversion to the governmental agency.