# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-280
_____

EDWARD A. CRAPO, as Alachua
County Property Appraiser,

    Appellant,

    v.

PROVIDENT GROUP - CONTINUUM
PROPERTIES, L.L.C., a Florida
not-for-profit limited liability
company, and VON FRASER, in
his capacity as Alachua County
Tax Collector,

    Appellees.

_____

On appeal from the Circuit Court for Alachua County.
Monica J. Brasington, Judge.

February 8, 2018

LEWIS, J.

Appellant, Edward A. Crapo, as Alachua County Property Appraiser, appeals a Final Declaratory Judgment in which the trial court determined that property used for student housing that is legally owned by Appellee, Provident Group – Continuum Properties, L.L.C., is equitably owned by the University of Florida ("UF") and is, thus, immune from ad valorem taxation. For the reasons that follow, we affirm.

Appellee owns legal title to the property at issue known as "The Continuum." The property is located near UF's campus in Gainesville and consists of 350,000 square feet, most of which is dedicated for graduate and professional student housing. Appellee's sole member is Provident Resources Group, Inc., a non-profit corporation that, as one of its charitable functions, assists public universities to acquire, develop, and operate student housing. Appellee's Amended and Restated Articles of Organization describes its purpose as follows:

> The Company is organized exclusively to further the stated charitable purposes of its Sole Member, a Georgia nonprofit and an organization exempt from Federal Income tax. Specifically, the Company is organized for the purpose of planning, developing, financing, equipping, operating, and maintaining a student housing facility and certain ancillary facilities located in Gainesville, Florida, exclusively for the benefit of [UF] and its students, consistent with the terms of a Student Housing Agreement by and between the University and the Company. The Company may engage in any lawful business activity permitted by the Act in furtherance of the foregoing purposes.

Article V, entitled "Public Benefit," sets forth:

> The Company shall operate exclusively in furtherance of the above stated charitable purposes and shall not engage in any activities that would jeopardize the tax exempt status of the Sole Member. No substantial part of the Company's activities will be carrying on propaganda or otherwise attempting to influence legislation. No part of the real earnings of the Company or any of its operations shall result in private inurement or impermissible benefits to private interests or individuals. The Company shall not be operated for pecuniary profit.

Pursuant to its Operating Agreement, Appellee is to "undertake the acquisition, financing, equipping, ownership, operation and maintenance of the Student Housing Facility for the benefit of the University and its students, consistent with the

2

terms and provisions of the Student Housing Agreement, which purpose is in furtherance of the stated charitable purposes of the Sole Member. . . ." The Board of Managers is to "utilize any available surplus cash flow of the Company solely and exclusively in furthering the Charitable Activities of the Company, consistent with the stated charitable purposes of the Sole Member." Upon the "winding up of the Company," the "Company Property (or the proceeds thereof)" must be distributed in the "following order and priority: (a) to creditors . . . (b) to the University . . . (c) to the Sole Member of the Company for distribution in accordance with its charitable purposes . . . ."

The Student Housing Agreement, which Appellee and UF's Board of Trustees executed on August 9, 2010, explains "that there is a need for additional housing for graduate and professional school students," that Appellee desired to assist UF in meeting the need for additional housing, and that Appellee would, with the support and direction of UF's Department of Housing and Residence Education, implement housing educational programs and policies to serve the needs of UF's graduate and professional school students. UF "shall market and promote the Facility as a University-affiliated housing option for University Students." Appellee agreed "that all net revenues from operations of the Facility shall be used solely for the purpose of furthering the Charitable Activities." UF acknowledged that it "shall directly and substantially benefit from the development, operation and management of the Facility by Provident and that the Facility will provide a much needed addition to the housing supply . . . ." Upon the repayment in full of the project's financing, "all right, title, and interest in and to the Property shall be conveyed from Provident to the University or to another similarly situated charitable organization . . . ." If all or a portion of the property were to be taken by condemnation or other eminent domain proceedings, "any award or compensation payable in connection with such Taking shall be paid to the following priority: (i) first, to satisfy any remaining repayment obligations under the Continuum Financing . . . (ii) second, to the University . . . ."

The Declaration of Covenants and Restrictions for the property provides that "Declarant hereby covenants that the Property herein . . . shall be used exclusively as a housing

3

community with related retail and ancillary uses . . . ." UF "shall have the right to enforce . . . all restrictions, covenants and conditions imposed by the provisions of this Declaration."

In April 2013, Appellee sought declaratory relief for tax immunity from May 28, 2010, to the date of judgment and also sought a refund of taxes for a portion of 2010 and for 2011. After the trial court granted Appellant's motion to dismiss the action for lack of subject matter jurisdiction, Appellee filed an amended complaint as the "Trustee for the use and benefit of the University of Florida." Appellee sought tax immunity for 2010 through 2014 and again sought a refund of taxes for a portion of 2010 and for 2011. The trial court granted Appellant's motion to dismiss the amended complaint, a ruling which Appellee appealed. In *Provident Group-Continuum Properties, L.L.C. v. Crapo*, 157 So. 3d 409, 410 (Fla. 1st DCA 2015), we reversed the dismissal order, setting forth in part:

> [T]he documents don't state that appellant was "trustee" of the property being held "in trust" for the University, but the documents are otherwise replete with statements regarding the powers and duties of appellant for the benefit of the University, including provisions requiring ultimate disposition of the trust property to the University, all of which establish the creation of a trust.
>
> We conclude that the documents established a trust for the benefit of the University of Florida, and thus appellant, as trustee, has standing to contest the tax assessment and is not barred by the time limit of section 194.171(2).

Thereafter, Appellee filed a second and third amended complaint, seeking a declaration of tax immunity for the property "for partial year 2010 and for the years 2011 through 2016; and alternatively, to exemption for 2014 through 2016." It again sought a refund of taxes for a portion of 2010 and for 2011.

During the non-jury trial, Norbert W. Dunkel, UF's Associate Vice-President for Student Affairs and Auxiliary Operations, testified that UF included the housing project at issue "as a part of

4

the Department of Housing and Residence Education website." He explained that UF began looking into expanding its graduate and professional housing in 2008. Because doing so "would cost [UF] about a quarter billion dollars," which was not feasible, Dunkel looked into "a public-private partnership to provide graduate and professional school housing . . . ." Working with Appellee enabled UF to meet its housing needs for graduate and professional students. UF participates in committees or boards that oversee the project and considers the project a substantial benefit. UF markets the project and hires and trains a master's level professional staff member who lives onsite and is responsible for the "overall residence education of the site," which includes responding to such things as roommate issues, programming issues, and student discipline issues. UF does not provide those types of services to private for-profit housing projects. Any surplus funds for the project are used for payment of the debt.

Donovan Hicks, Appellee's Executive Vice-President, Chief Legal Officer, and Corporate Secretary, testified that Appellee is a "501(c)(3) organization" that "pursues activities in multiple areas, including lessening burdens of government." He explained that the project at issue involved a private non-profit party collaborating with a university to achieve a stated objective of that university and to eliminate certain risks that "universities try to avoid by designing, constructing these projects, financing them, without the university having to incur that indebtedness and able to still get the benefit . . . and then ultimately ownership of the project." Appellee had no financial investment of its own in the property. When asked about any surplus funds that would result from tax immunity, Hicks testified, "Any type of resulting excess cash flow or surplus has to be, under the terms of our agreement with [UF], either reinvested in the project, for example, any – taking care of any capital improvement needs that the project might have, assisting the University." When asked who benefits from a surplus cash flow, he replied, "Well, I would say the project, the students who live there, the University whose mission is being served, and then ultimately the University when the project is transferred to them." He explained that Appellee charges market rate rents to students who live at the property because "it costs a lot of money to construct and operate and maintain a project like that" and because the "mission we are pursuing there is to assist

5

the University in achieving its goals and objectives to have a top-quality project that's operated and maintained at the standards that in this case [UF] would want us to maintain . . . ." UF exercises control over rental rates "[t]hrough their participation on the project operations committee and the board of managers . . . ."

In the Order Granting Plaintiff's Declaratory Judgment, the trial court set forth in part:

> These four documents dedicate the property to the use and benefit of the University as graduate and professional student housing, and also dedicate any surplus revenue from the project to a "charitable" use (defined in the documents to mean use for the University's benefit). Upon retirement of the project financing, the University is entitled to a deed for legal title to the property free and clear, for no payment. Other provisions in the SHA secure the University's rights to approve project plans, use, financing, operations, rental terms, and other matters, and its rights to be named as an insured for the property and to condemnation proceeds if the property is taken. Provident has legal title, but has no equity invested in the property or equitable ownership.
>
> . . . .
>
> The ruling of the First District Court of Appeals, which constrains this court's decision-making authority on certain issues in this matter, held that the documents establish a trust in which Provident holds legal title as trustee for the benefit of the University as equitable owner. The evidence at trial . . . confirms that a trust relationship is carried out in the operation of the project. Provident has operated the project in accordance with the SHA. The project's ownership and use have been the same for each of the years in question.
>
> . . . .

6

. . . [T]he University clearly intended to have the use and benefit of this project and has accepted the same. . . . It allows the project to use its name and affiliation to attract student tenants, and provides services on-site. It has accepted the benefits of this transaction for over five years, and has the prospective benefits of continued dedicated use and ultimate title. The University, and not Provident, will benefit if tax relief is granted. In sum, the evidence confirms that the University is the equitable owner of the property as beneficiary of the trust.

The University is a state agency and is the owner of the property for purposes of property tax. This establishes the property's status as immune from tax. . . .

The trial court alternatively determined that Appellee was entitled to a governmental and charitable tax exemption for 2014 through 2016.

In the Final Declaratory Judgment, the trial court found that Appellee was entitled to a refund of $44,878.12 for tax year 2011 and set forth in part, "The entire assessed value is immune from property tax; therefore, no property tax is due for the years in question." This appeal followed.

An order in a declaratory judgment case is generally accorded a presumption of correctness on appeal. *Reform Party of Fla. v. Black*, 885 So. 2d 303, 310 (Fla. 2004). To the extent a decision rests on a question of law, however, an order is subject to de novo review. *Id.*; *see also Vill. of N. Palm Beach, Fla. v. S & H Foster's, Inc.*, 80 So. 3d 433, 436 (Fla. 4th DCA 2012) ("On review of a declaratory judgment, we defer to the trial court's factual findings if supported by competent, substantial evidence. . . . The court's conclusions of law are reviewed de novo.").

As the Florida Supreme Court has explained, what comprises "the State" for purposes of ad valorem tax immunity is limited to "counties, entities providing the public system of education, and agencies, departments, or branches of state government that perform the administration of the state government." *Canaveral Port Auth. v. Dep't of Revenue*, 690 So. 2d 1226, 1228 (Fla. 1996).

7

Appellant argues that the State's immunity from taxation does not enure to benefit a private entity by unilateral declaration without legal basis in law or facts. Appellant acknowledges, however, that property need not be legally owned by an immune entity to be immune from taxation, but can instead be equitably owned. For instance, in *Leon County Educational Facilities Authority v. Hartsfield*, 698 So. 2d 526, 527 (Fla. 1997), the appellant, a public corporate body that was empowered to own, lease, and finance higher educational facilities, "determined" to operate a dormitory and food service project for the purpose of serving the students at FSU, FAMU, and TCC. SRH, a non-profit Florida corporation, was established solely for the purpose of facilitating the financing, acquisition, construction, and equipping of the project. *Id.* The appellant entered into a lease with option-to-purchase agreement with SRH under which SRH as the lessor would acquire, construct, and equip the project and lease it to the appellant in exchange for periodic rental payments. *Id.* Any net proceeds in excess of the amounts owed to the investors would be paid to the appellant. *Id.* The lease specified that the appellant would be responsible for maintenance and insurance on the project and would pay any taxes that were assessed against the project. *Id.* Upon paying the investors in full, the appellant could purchase the project for $1. *Id.* The appellant and SRH sued for declaratory relief as to the denial of a tax exemption, and the trial court entered summary judgment in favor of the property appraiser. *Id.* After noting that the concept of equitable ownership in ad valorem taxation has long been a part of Florida law, the supreme court set forth in part, "Fairness dictates that the doctrine of equitable ownership should be applied evenhandedly regardless of whether a tax is being imposed or an exemption is being claimed. . . ." *Id.* at 529. The court concluded that the appellant was the equitable owner of the property, while noting that the only reason legal title was held by SRH was to facilitate financing. *Id.*; *see also Russell v. Se. Housing, LLC,* 162 So. 3d 262, 269-73 (Fla. 3d DCA 2015) (noting that five military housing complexes were being improved and operated pursuant to a public-private partnership between the United States Navy and a private developer and affirming a judgment holding that the property was not subject to ad valorem taxes because the record established that the Navy retained equitable and beneficial ownership of the property where: (1) the use of the improvements was limited to military housing – a Navy

8

purpose; (2) the Navy oversaw the construction of improvements; (3) the Navy directed the rental of the housing units; (4) the Navy controlled access to the improvements; (5) the Navy supervised the operation of the improvements during the entire lease term; (6) the Navy benefitted from the revenues and received the lion's share of the profits; (7) the Navy would take back the improvements at the end of the lease; and (8) the transfer of title occurred in order to accomplish something other than the transfer of ownership).

Appellant asserts that Appellee is the equitable owner of the property because it administers the current operations of the project and because UF is only provided the benefit of being able to offer students housing at market rates. However, we reject Appellant's attempt to diminish the importance of the benefit UF is receiving from the project. As was the case in *Hartsfield*, where a non-profit corporation's involvement in a project benefitted a public body, UF acknowledged in the Student Housing Agreement its "direct and *substantial* benefit from the development, operation and management of the Facility" as a "*much needed* addition to the housing supply . . . as well as to further its "educational purposes and objectives." (Emphasis added). We also reject any attempt to lessen UF's involvement in the housing project. Similar to the facts in *Russell*, UF was given the right to approve project plans, use, financing, operations, and rental terms for the project. UF allows the project to use its name and affiliation to attract tenants, and it provides services on-site. When the project's repayment obligations are satisfied, UF is entitled to legal title without payment. UF would also be entitled to compensation in any condemnation proceedings once any remaining repayment obligations are paid. Moreover, as we previously determined, the pertinent documents established the existence of a trust for UF's benefit. *See Crapo*, 157 So. 3d at 410; *see also Imagine Ins. Co. v. State ex rel. Dep't of Fin. Servs.*, 999 So. 2d 693, 700 (Fla. 1st DCA 2008) (noting that a "trust beneficiary possesses an equitable ownership in the trust property, while the trustee possesses legal title to the property"). As such, we find no merit in Appellant's argument that the trial court erred in determining that UF is the

9

equitable owner of the property and that, as a result, the property is immune from ad valorem taxation.[*]

Accordingly, we affirm the Final Declaratory Judgment.

OSTERHAUS and BILBREY, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

John C. Dent, Jr., and Jennifer A. McClain of Dent & McClain, Chartered, Sarasota, for Appellant.

David K. Miller of Broad and Cassel LLP, Tallahassee, for Appellee Provident Group – Continuum Properties, L.L.C.

---

[*] Given our disposition as to the trial court's immunity determination, we need not address its alternative tax exemption conclusion. *See Russell*, 162 So. 3d at 266-67 (noting that there are two reasons why a property would not be subject to tax: (1) the property is immune or (2) the property is exempt and that while immunity occurs when a "taxing government simply lacks power to tax certain property because it is owned by a sovereign government," a tax exemption occurs when "the taxing government, in a manner authorized by the state constitution, enacts a law excluding otherwise taxable properties from the tax, typically because the properties are both used for a tax-exempt purpose and owned by a tax-exempt entity").