832 So.2d 147 (2002)
BREVARD COUNTY FAIR ASSOCIATION, INC., Appellant,
v.
COCOA EXPO, INC., Appellee.
No. 5D01-3715.
District Court of Appeal of Florida, Fifth District.
November 1, 2002.
Rehearing Denied December 18, 2002.
*148 James H. Fallace and Christina B. Sutch of Fallace & Larkin, LLC, Melbourne, for Appellant.
Patricia K. Olney of Patricia K. Olney, P.A., Port Canaveral, for Appellee.
SHARP, W., J.
Brevard County Fair Association ("Brevard Fair") appeals from a final judgment rendered after a bench trial and an order denying it attorney's fees as the prevailing party. We affirm.
The litigation below was complex and disputed. It essentially focused on the interpretation of a lease between Brevard Fair and Cocoa Expo, Inc. ("Cocoa Expo"), which was executed by the parties in 1984. The lease operated for ten years, was verbally modified in 1990, and extended by written addendum in 1992 for ten more years. The subject of the lease was a site *149 owned by Cocoa Expo, which Brevard Fair used from October 15 to November 15, each year, to conduct the annual Brevard County Fair. The principals of Brevard Fair, Stottler, Wasdin and Turner were also shareholders, officers and directors of Cocoa Expo at various times.
On October 17, 1997, prior to the commencement of the Fair on October 31, a dispute arose between the parties as to which entity was entitled to operate the beer concessions. As a result of this dispute, Cocoa Expo locked Brevard Fair out of the property. The parties attempted to settle their disputes concerning beer concessions, accrued rent, utility costs, and other matters, but were unable to do so. Brevard Fair obtained a temporary restraining order to enable it to hold the Fair as planned. The temporary restraining order allowed Cocoa Expo to operate the beer concessions, and provided that entitlement to the revenue would be decided at a later trial.
At this time, Brevard Fair had five years remaining on its lease. It claimed it incurred $370,916 in damages based on its loss of use of the property. It also claimed lost beer-concession revenues for 1997 and for the balance of the lease term. In 1998, Fair, Brevard Fair terminated the lease and moved the Fair to another location. Cocoa Expo sued Brevard Fair for accrued rent and other charges, and it countersued Cocoa Expo for breach of the lease, wrongful eviction, unjust enrichment and promissory estoppel.
The resolution of these issues, and the unraveling of the parties' relationship required the taking of disputed testimony, both of the experts and the principals involved, as well as analysis of financial and other documents. The trial judge did an able and excellent job. He found:
1. There as [sic] a written lease agreement entered into by the parties in 1984.
2. The lease was verbally modified in 1990, allowing Plaintiff to receive ten (10% percent of the gross revenues from each year's Fair,) for which the Defendant would receive $10,000.00 per Fair from Plaintiff for bringing in customers. There were other elements of consideration which may not have occurred immediately, but constituted consideration for oral modifications to the lease, including change in [the] site, fences, capital improvements, etc.
3. The parties made changes informally on many items, one of which was when the rent payment to Plaintiff was due. The written lease called for a much more proper payment, but the course of conduct was that payments were to be made after the following year's Fair.
4. From the totality of the evidence there was a contract between the parties as orally modified for which there was consideration.
5. Defendant acknowledged the terms of the oral modifications for at least six (6) years subsequent as reflected by the notes on their financial statements, and that after each Fair the Plaintiff's and Defendant's representatives would get together and negotiate setoffs and arrive at the amount due in rent for that year's fair.
6. Defendant's contention that there was no consideration for the 1990 oral modification is rejected by the Court.
7. Defendant's contention that if Defendant did not have this money to pay the rent, Plaintiff's were to forgive the debt, is rejected by the Court. Under normal circumstances such an agreement would make no sense, but in this case the parties were interwoven with common officers, shareholders, also Defendant is a not for profit corporation. However, a review of the minutes of the *150 Director's meetings suggest that, while such a proposal was discussed, it was never agreed between the parties. This occurred both on October 3, 1990, and October 13, 1997, but was voted down both times. Mr. Wasdin's affidavit executed on October 24, 1997, in which he did not mention this forgiveness provision will not be given any weight given the short time that the Defendant's counsel had to prepare for an emergency hearing which was held on October 24, 1997, the scheduled date, and will not be considered in any way.
8. For the 1996 Fair Plaintiff is entitled to recover from Defendant $31,662.00 for rent due with prejudgment interest starting November 30, 1997.
9. For the 1997 Fair Plaintiff is entitled to recover from Defendant as follows:

(a) rent (10% of $383,150.00) $38,315.00
(b) utilities, insurance for twenty $11,284.63
 (20) days of the lease for
 which Defendant was actually
 on the premises ($17,495.55 ×
 64.5%)
(c) site preparations 5,325.00
(d) damages to site 12,610.00
(e) minus payments made 
(f) minus advertising cost owed 
 by plaintiff
for a total due for 1997 $36,209.63
with prejudgment interest starting November 30, 1998.

The Court finds as to Defendant's Counterclaims as follows:
10. Plaintiff did breach the contract by constructively evicting the Defendant by locking them out on October 24, 1997, which continued until Plaintiff was ordered by the Court to allow Defendant back on the premises.
11. The argument that there wasn't much of a lockout, as reflected by the fact that the subtenants were allowed to come on the property is rejected because: (1) the fact the subtenants, or the ride owners or the concession stand owners, etc., were allowed on the property does not mean that the tenant was not ordered off the property; (2) the fact that other vendors and others were allowed on the property might just indicate that the Plaintiff intended to deal directly with them rather than through the Defendant.
12. The fact that the Defendant returned to the property and completed the Fair was not a waiver of their right to claim a constructive eviction. It was a reasonable and necessary method of mitigating the Defendant's damages. The damages would have otherwise exceeded $100,000.00 if the Defendant could not complete the fair, so the Court finds that it was reasonable for the Defendant to come back on the property to complete the Fair, and then after that to not return for the following year.
13. Defendant is entitled to recover their costs and attorney's fees for obtaining the injunction against Plaintiff and interest on the bond from the date of posting until released to Defendant.
14. Defendant's claim that the termination of the lease by constructive eviction by Plaintiff resulted in additional damages is rejected by the Court. It is undisputed that the Defendant was losing money, with a clear pattern of decreasing revenues over the 1990s. They did not even have money to pay the rent. This had caused the Defendant's officers to discuss moving the Fair prior to 1997. The court finds that Defendant was losing money and there is no basis to award any damages for lost profits.
15. The lease was ambiguous as to who would be entitled to control the beer revenues at the Fair. The court finds that the parties construed the ambiguity in favor of Plaintiff, as supported by the *151 fact that Plaintiff controlled the beer sales through 1996, without objection until 1997. Also Defendant's own officer, Tom Wasdin, executed a ten (10) year contract, (he was also an officer for Plaintiff) from Plaintiff to Cape Kennedy Shores, Inc., granting them the right to handle the beer sales. This implicitly recognized that Plaintiff and not Defendant had the right to control the beer sales. Based on the foregoing the Court rejects Defendant's claim to loss of beer sales as the Court finds Plaintiff and not Defendant was entitled to them under the lease.
16. Defendant did not suffer any damages from their move from Plaintiff's property to their present location. In fact they now are at a place where they enjoy a portion of the beer revenues.
The judgment rendered awarded Cocoa Expo rent amounting to $31,662.00 for the 1996 Fair (with prejudgment interest), and $36,209.63 for the 1997 Fair (with prejudgment interest). That amount was reduced by allowing Brevard Fair to recover from Cocoa Expo for interest paid on the bond it posted to obtain the temporary restraining order ($5,000.00), which was superceded by a bond for $20,000.00 plus interest on that bond ($8,417.36) and attorney's fees necessary to obtain the injunction ($7,918.00 plus interest on that sum). Thus the total judgment due from Brevard Fair to Cocoa Expo is $74,804.76. A later order denied Brevard Fair's motion for attorney's fees.
Brevard Fair presents five issues on appeal, dealt with separately in this opinion.
Propriety of Award of Attorney's Fees For Injunction Only. Brevard Fair argues that the trial court erred in not awarding attorney's fees for the entire course of this litigation. Fees were ordered only for services involved in obtaining the injunction. It's position is that the lease between the parties provided for an award of attorney's fees to the prevailing party, and the trial court found that Cocoa Expo breached the lease by constructively evicting Brevard Fair from the leased site in 1997. This point turns on whether Brevard Fair was in fact the prevailing party in this litigation as a whole.
The trial court found that both parties had prevailed on significant issues. Cocoa Expo prevailed on its claim to recover rent and other expenses under the lease, and Brevard Fair prevailed on its right to obtain an injunction against the lock-out. The court expressly found that it would be inequitable to award attorney's fees to either party in this case, because although both won on significant issues, they also both lost on significant issues. This court has agreed with KCIN, Inc. v. Canpro Investments, Ltd., 675 So.2d 222 (Fla. 2d DCA 1996), that under such circumstances, the trial judge has discretion to determine no party prevailed in the litigation and it is proper to deny an award of attorney's fees under a prevailing party contract or statute. Lasco Enterprises, Inc. v. Kohlbrand, 819 So.2d 821 (Fla. 5th DCA 2002).
Course of Dealing. Brevard Fair argues there was not substantial competent evidence to support the trial judge's conclusion that Cocoa Expo was entitled to operate the beer concessions under the lease. The trial judge viewed the lease as ambiguous on this point, and we agree. Thus it based its finding on the course of dealing of the parties during the lease, which was to let Cocoa Expo control the concession during the totality of lease, except for the last year.
If a lease is ambiguous or its meaning is unclear, the circumstances of how the parties operated under the lease may be considered in resolving the true intent *152 and meaning of the document. Tampa Fed. S & L Ass'n v. Aeon, Inc., 403 So.2d 1002 (Fla. 2d DCA 1981); Reinhardt v. Reinhardt, 131 So.2d 509 (Fla. 3d DCA 1961). Courts often look to the conduct of the parties in their course of dealings to determine the meaning of a contract. Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404, 407 (Fla.1974); Lalow v. Codomo, 101 So.2d 390 (Fla.1958); Maines v. Davis, 491 So.2d 1233 (Fla. 1st DCA 1986).
We conclude the trial judge properly relied on the parties' course of dealing during the lease to determine the meaning of the ambiguous provision in the lease. In serving as a fact finder, the trial court's conclusion comes to us clothed with the presumption of correctness. Tyson v. Edwards, 433 So.2d 549, 556 (Fla. 5th DCA 1983).
Modification of Lease. Brevard Fair argues the trial court erred in its findings concerning the 1990 lease modification. Because the lease is a conveyance of real property for a period of time in excess of one year, it asserts that any changes of its obligations or rights must have been established by competent proof, which is definite and certain. Muhtar v. Goldman, 419 So.2d 383 (Fla. 3d DCA 1982); Batista v. Walter & Bernstein, 378 So.2d 1321 (Fla. 3d DCA 1980); Moraitis v. Galluzzo, 487 So.2d 1151 (Fla. 4th DCA 1986).
We conclude that this higher burden of proof was in fact met. The terms of the modification which increased Brevard Fair's rent were discussed and agreed upon in 1990 by the three principals; Wasdin, Turner and Stottler. As indicated in the minutes of Brevard Fair's Executive Committee, there was a discussion about reducing the rent in the event Brevard Fair lost money. However, there was no evidence that this reduction in rent or rent forgiveness was ever accepted by Cocoa Expo. Financial records of the parties show the increased rents accrued on their books during the balance of the lease.
Further evidence in the record supports Cocoa Expo's position that there was consideration for the modification which increased the rent payable under the lease. This included Cocoa Expo's $10,000 payment per year to Brevard Fair, its agreement to change the site, fences and make capital improvements, and its agreement to reimburse 40% of Brevard Fair's advertising costs.
Lost Profits Claim. Brevard Fair argues the trial court erred in limiting its damages to a return of the injunction bond, interest and attorney's fees relating to the injunction. The expert witness for Brevard Fair, Oswalt, testified that although the enterprise had experienced declining revenues each year since 1984 through 1996, the net profit each year was $29,300.00. Projecting this figure for the remaining four years of the lease, the expert concluded Brevard Fair lost profits of $117,200.00 and over $100,000.00 in lost investment and capital improvements.
However, the evidence adduced at the trial established that Brevard Fair had lost money and was in a negative position at the end of the recent fairs. Declining revenues and attendance had led the principals of Brevard Fair to consider moving the location of the Fair, prior to 1997. In the most recent years Brevard Fair lost money. After the move in 1998, Brevard Fair claimed its location was superior and more advantageous than the former site.
Lost profits must be established with a reasonable degree of certainty, and must be a natural consequence of the wrong. See Forest's Mens Shop v. Schmidt, 536 So.2d 334 (Fla. 4th DCA 1988); U.S. Home Corp. v. Suncoast Utilities, *153 Inc., 454 So.2d 601 (Fla. 2d DCA 1984); Daytona Migi of Jacksonville, Inc. v. Daytona Automotive Fiberglass, Inc., 388 So.2d 228, 232 (Fla. 5th DCA 1980); Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA 1975). They cannot be based on mere speculation and conjecture. See Shadow Lakes, Inc. v. Cudlipp Const. & Development Co., Inc., 658 So.2d 116 (Fla. 2d DCA 1995); Marshall Const. Ltd. v. Metal & Roofing, Inc., 569 So.2d 845 (Fla. 1st DCA 1990); Himes v. Brown & Co. Securities Corp., 518 So.2d 937 (Fla. 3d DCA 1987). The standard for degree of certainty requires that the mind of a prudent impartial person be satisfied with the damages. Conner. Further, a condition precedent to recovery is proof by competent substantial evidence that the business has earned profits for a reasonable time before the occurrence of the wrong. Forest's Mens Shop; Daytona Migi. In this case, the evidence showed that the Fair had not earned profits for a reasonable time before the dispute, and as such, lost profits were not established by a reasonable degree of certainty.
We agree with Cocoa Expo that Brevard Fair's lost profits claim must also fail because Brevard Fair chose to terminate the lease and in so doing, it abandoned the Cocoa Expo site, even though offered an opportunity to return. At the Brevard Fair Director's meeting in the spring of 1998, Stottler, who then held the controlling interest in Cocoa Expo, moved to hold the Fair at the Cocoa Expo site in 1998. Wasdin and Turner voted to table the motion. In July of 1998 they voted to terminate the lease, and did so. The constructive eviction in 1997 lasted a brief time and did not delay the opening of the 1997 Fair. All damages for that time were figured into the final judgment.
Calculation of Rent. We also find no error in the trial court's calculation of rent due to Cocoa Expo from Brevard Fair for 1996 and 1997. The sums found by the trial judge were supported by the lease, the trial testimony and exhibits.
AFFIRMED.
HARRIS and PLEUS, JJ., concur.