IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SOUTHERN NATIONAL
TRACK SERVICES, INC.,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Appellant,

CASE NO. 1D13-5412

v.

DJ GILLEY,

Appellee.

_____/

Opinion filed October 23, 2014.

An appeal from the Circuit Court for Hamilton County.
Sonny Scaff, Acting Circuit Judge.

Richard W. Glenn, Jupiter, for Appellant.

Stephen C. Bullock of Brannon Brown Haley & Bullock, P.A., Lake City, for
Appellee.

THOMAS, J.

Appellant appeals a final summary judgment with respect to its claims
against Appellee for breach of warranty by failure to disclose and for damages
based on fraudulent misrepresentation. Appellant also appeals the trial court's
final judgment for attorney's fees and costs predicated on Appellee having
prevailed in this matter. As explained below, we reverse the final summary
judgment and remand the fee judgment.

*Factual Background*

This matter arises out of a real estate transaction. Appellant contracted to purchase from Appellee a piece of property that included a number of small cottages and one larger "modular" structure. It is this latter structure that formed the basis of the dispute below. Through its representative, Mr. Plezia, Appellant purchased this property for the purpose of housing Appellant's employees, including Mr. Plezia, when they were in the vicinity performing work on behalf of Appellant. According to Appellant's complaint, the structure in question was advertised as a two-bedroom residence complete with fountain and swimming pool.

Undisputed is that Mr. Plezia did a brief walk-through of the buildings on the property, including the modular structure, before signing a contract which gave Appellant the right to obtain an inspection of the property within 20 days of acceptance. The contract also provided an express warranty by Appellee that, as of the time of closing, there existed no violations of "land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority . . . ."

Mr. Plezia testified that by all appearances, the structure was a two-bedroom residence. Mr. Plezia's unrebutted testimony is that, after signing the contract, but before the transaction was closed, Mr. Plezia walked through the modular structure

2

with Appellee and her daughter and discussed how, at various times, Appellee, her daughter, and her parents resided in the structure and other aspects of the building that Mr. Plezia testified were all typical of a residence. Also undisputed is that, other than these walk-throughs, Appellant took no steps to have the property inspected or to confirm that the building was built as a residence.

Some months later, Mr. Plezia testified, he noticed water leakage problems that worsened as the rainy season progressed, and he discovered what appeared to be patches of black mold on some of the walls that had been painted over. He also testified that later inspection revealed that the structure was not a modular residence at all, but a large storage shed that had been converted into a residence without conforming to the applicable building codes, permitting regulations, and zoning laws.

Appellant then filed a three count complaint for 1) breach of contractual warranty by failure to disclose; 2) fraudulent misrepresentation; and 3) rescission. The first count was based on the disclosure obligations mandated by Johnson v Davis, 480 So. 2d 625 (Fla. 1985). On Appellee's motion to dismiss, the trial court dismissed that count based on its finding that the property in question was commercial, not residential; therefore, the Johnson disclosure obligations were inapplicable.[1]

---

[1] Appellant also ultimately dropped its rescission claim.

By the time the court heard the motion for summary judgment leading to the judgment on appeal, the relevant pending claims were for breach of the warranty as to the property's compliance with applicable codes and regulations, the attendant failure to disclose that the structure in question was not a residential building, and the claim for damages flowing from those misrepresentations about the true nature of the property.

Appellee asserted she was entitled to summary judgment, because there were no genuine issues of material fact regarding whether Appellant failed to have the property inspected until after signing the contract; Appellant performed little or no due diligence; and all of the defects would have been readily discovered, had Appellant "done its due diligence under the contract and pursuant to Florida law" before purchasing and closing on the property. Appellee cited to portions of Mr. Plezia's deposition and her own affidavit in which she denied any "knowledge of any Building Code compliance issues, any roof leaks, mold infestation or any other alleged defects" of the property.

In its final summary judgment, the court found that "[c]ertain material facts to Plaintiff's cause of action have not been established . . . in this record" and that there was "no admissible evidence in the record to support any" claim that Appellee breached the contract. The court also noted the contract provision affording Appellant 20 days to have the property professionally inspected and

4

provide Appellee written notice of any defects. The court found it was undisputed that Appellant did not conduct an inspection and did not provide Appellee with any notice of defects, resulting in a waiver "as a matter of law" of any such defects. The court also reiterated its prior judgment that, because this case involved a contract for commercial property, Appellee had no duty to disclose, and also found that, even if such a duty did exist, "the record supports the undisputed facts that Defendant did not fail to disclose any known defects regarding the property." The court also found "from the record" that the contract, "along with the Seller's duties, merged with the Deed at the time of closing." The court further found that the record did "not support any material facts that Defendant committed any fraud or misrepresentation regarding any alleged defects in this commercial transaction" and demonstrated that Appellant's representative, Mr. Plezia, "did not have any verbal communication with the Defendant prior to negotiating and signing the Contract and, therefore, any statements made by Defendant thenceforth would be irrelevant."

### Substantive Analysis

The standard of review of a final summary judgment is de novo. Le v. Lighthouse Assocs., Inc., 57 So. 3d 283, 284 (Fla. 4th DCA 2011). "Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has

5

been entered, and (2) the moving party is entitled to a judgment as a matter of law." Armiger v. Associated Outdoor Clubs, Inc., 48 So. 3d 864, 869 (Fla. 2d DCA 2010) (citations omitted). "If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper." Holland v. Verheul, 583 So. 2d 788, 789 (Fla. 2d DCA 1991).

A party seeking summary judgment faces a significant burden, and based upon our review of the record, Appellee failed to overcome this burden. The trial court did not view the facts through the appropriate lens, because it did not acknowledge the different inferences that could be drawn from the facts, particularly those inferences reasonably drawn in Appellant's favor.

We hold that there are genuine issues of material fact concerning whether Appellee, either directly or through her agents, misrepresented: 1) the very nature of the structure in question (i.e., a genuine residence built to those standards applying to residences, as opposed to a storage shed converted to a "residence" and not complying with such standards); and 2) whether the structure complied with various governmental laws and regulations. The fact that Appellee's affidavit denied any knowledge of building codes or other violations only highlights the existence of a conflict in the facts, which generally precludes summary judgment rather than proves that no conflict exists.

6

The trial court attached great significance to the fact that any statements Appellee may have made to Appellant occurred after the contract was signed, but before closing. The court found that any such statements made during this period would be "irrelevant," and cited Wasser v. Sasoni, 652 So. 2d 411 (Fla. 3d DCA 1995). But Wasser does not address the timing of any alleged misrepresentations (i.e., after a contract was signed but before closing); rather, it holds that "an intentional nondisclosure of known facts materially affecting the value of commercial property, is not actionable under Florida law," and that "a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence." Id. 412.

Notably, the Wasser court recognized that "exceptions to the general rule could exist under certain circumstances, for example, where specific misrepresentations regarding a latent defect are made to a negligent purchaser." Id. at 412-13. Here, as discussed below, there were facts from which one could reasonably infer intentional non-disclosure or possible misrepresentations about latent defects (e.g., the non-residential nature of the structure). Furthermore, even "ordinary diligence" would not have revealed the truth regarding these possible scenarios. The Wasser court explained that "a negligent purchaser is not justified in relying upon a misrepresentation which is *obviously false*, and 'which would be patent to him if he had utilized his opportunity to make a cursory examination or

7

investigation.'"  Id. at 413 (quoting Besett v. Basnett, 389 So. 2d 995, 997 (Fla.1980) (emphasis added)).  But again, as discussed below, there was conflicting evidence as to whether any representation that the structure in question was a residence was "obviously false."

Attached to both Mr. Plezia's deposition and affidavit was a copy of the real estate advertisement concerning the property, including the structure in question, from which it could readily and reasonably be inferred that it was a two-bedroom home complete with swimming pool and other accoutrements typical of residences, not storage sheds.  Mr. Plezia testified that he walked through the structure with the real estate agent before signing the contract and saw nothing to indicate that the structure was anything other than a modular residence.  He did another walk-through with Appellee herself before closing, during which, according to Mr. Plezia, Appellee made various representations which could reasonably be inferred to represent the structure was a purpose-built home, and not a converted storage shed.  We also note that the very contractual provision allowing for inspection, upon which Appellee and the court rely so heavily, referred to Appellant's right to retain an entity for a person "specializing in home inspections."  Thus, the contractual language itself perpetuated the notion that the structure in question was a "home," as commonly understood.

From all of this, it is reasonable to infer that these facts as alleged persuaded Mr. Plezia that it was not necessary to hire an expert in "home inspections" or perform some other "due diligence" in order to ascertain whether the structure was a home. He testified that he had purchased homes in the past and never did either of these things. This is important because there are facts in the record to support the inference that, because the structure was actually a converted storage shed and not a purpose-built home, all of the other defects complained of flowed from this fact.

Furthermore, Mr. Plezia testified that he found what looked like black mold that had been painted over. Considering his testimony that Appellee told him she personally had lived in the "home," one could reasonably infer that she had knowledge of this and, therefore, acquiesced in concealing this defect. Nor is it clear how the court concluded from this record that an inspection would have revealed this alleged mold, as the mold did not reveal itself until after the alleged leaks began, leaks that may not have occurred had the roof been built according to residential standards, as opposed to storage shed standards. Of course, we express no opinion on whether Appellant will successfully prove these inferences are credible, which must be defined in a trial on the merits of the allegations.

We last address the trial court's summary conclusion that the contractual warranty at issue merged with the deed at the time of closing, thus, presumably,

precluding Appellant's claim. The court cited as support for its conclusion Stephan v. Brown, 233 So. 2d 140 (Fla. 2d DCA 1970). That case stands for the proposition that a real estate contract becomes merged with the deed and that, absent the existence of a warranty in the deed, the seller is "under no duty or obligation with respect to any warranty against encumbrances on the property after the deed had been accepted by the purchaser." Id. at 141.

In Sager v. Turner, however, the real estate sale contract for a mobile home park included a contractual provision similar to the one here: "Seller warrants that at the time of closing there are no violations of licenses, permits, planning or zoning ordinances, easements land or deed restrictions." 402 So. 2d 1282 (Fla. 4th DCA 1981). In Turner, after the deal closed, the buyer went to the city in which the property was located to obtain a license. The city "issued a conditional license, contingent upon [buyer's] repair of all mechanical, electrical and plumbing violations which existed. [Buyer] made the required repairs and brought this action to recover its expenditures in so doing." Id. The purchaser succeeded in obtaining a summary judgment, and the seller appealed, arguing reversal was warranted based on the merger doctrine pursuant to Fraser v. Schoenfeld, 364 So. 2d 533 (Fla. 3d DCA 1978). Id.

In Fraser, which relied on the same cases as Brown, the Third District found the buyer's claim for damages based on breach of a similar warranty, with respect

10

to municipal code compliance, was barred by merger, holding: "'where, as here, the purchaser has knowledge of claimed violations and, thereafter, closes the deal, he is precluded by the doctrine of merger from a subsequent suit on a covenant contained in the contract of sale.'" Turner, 402 So. 2d at 1283 (quoting Fraser, 364 So. 2d at 534). The Turner court reversed the trial court's summary judgment because, unlike in Fraser, the buyer in Turner did **not** have any prior knowledge of the claimed code violations. Id. at 1283.

> It is a general rule that preliminary agreements and understandings relative to the sale of property usually merge in the deed executed pursuant thereto. However, there are exceptions to the merger rule. The rule that acceptance of a deed tendered in performance of a contract to convey land merges or extinguishes the covenants and stipulations contained in the contract *does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed or satisfied by the execution and delivery of the stipulated conveyance.*

Id. (quoting Milu, Inc. v. Duke, 204 So. 2d 31, 33 (Fla. 3d DCA 1967) (citation omitted; emphasis added). In affirming the summary judgment, the Turner court found that the evidence was uncontradicted that "the city license could not be obtained because of violations which existed at closing." Id.

Here, there is no evidence that the parties intended for the warranty at issue to merge with the deed. Also, Appellant could not use the structure in question as a result of zoning and building code violations that existed at the time of closing,

11

and its ability to use the structure as a residence was not "necessarily performed or satisfied by the execution and delivery of the stipulated conveyance." Thus, the trial court erred in granting summary judgment based on the merger doctrine.

*Judgment for Attorney's Fees and Costs*

The trial court entered a judgment for attorney's fees and costs in favor of Appellee, and Appellant duly included with its notice of appeal this judgment as one of the orders it was challenging. As Appellee correctly points out, however, Appellant did not address this fee judgment in its initial brief; thus, Appellee filed a motion to dismiss Appellant's appeal of this judgment. Appellant responds that the judgment is entirely predicated on Appellee having obtained the summary judgment on appeal, thus, if the summary judgment is reversed, this court must vacate the fee judgment.

As a general rule, failure to address an issue raised on appeal results in waiver, but Appellant is correct that "[o]nce a final judgment is reversed and remanded by an appellate court, there can be no prevailing party for purposes of an award of prevailing party attorney's fees. Consequently, an award of attorney's fees and costs predicated on a reversed or vacated final judgment also must be reversed." Marty v. Bainter, 727 So. 2d 1124, 1125 (Fla. 1st DCA 1999). Rather than relying on this principle, however, the proper and preferred practice for a party appealing a fee judgment, which is predicated on the underlying substantive

12

judgment on appeal, is to make some argument in the appropriate brief(s) as to why the fee judgment should also be reversed, citing appropriate authority.

Due to Appellant's failure to raise any argument challenging the attorney's fee award, we grant Appellee's motion to dismiss Appellant's appeal of the judgment for attorney's fees and costs. Our dismissal is without prejudice, in the event Appellant prevails on the merits below, and Appellant timely challenges the judgment for attorney's fees and costs under Bainter.

### *Conclusion*

We reverse the final summary judgment and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

PADOVANO and CLARK, JJ., CONCUR.