# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

—————————————————

Case No. 5D2021-2409
LT Case No. 2010-DR-504

—————————————————

BRENDAN HURLEY, as Personal
Representative of the Estate of
Harry G. Veon,

    Appellant,

    v.

SHIRLEY ANN VEON,

    Appellee.

—————————————————

On appeal from the Circuit Court for Seminole County.
Susan Stacy, Judge.

Samuel Alexander, of Alexander Appellate Law P.A., DeLand, for
Appellant.

Nicholas A. Shannin, B.C.S. and Carol B. Shannin, of Shannin
Law Firm, P.A., Orlando, for Appellee.

June 28, 2024

PRATT, J.

    This is a timely appeal by the representative of the estate of
Harry Veon ("Former Husband") from a post-judgment final order
granting Shirley Ann Veon ("Former Wife") $788,595.53 under
several provisions of a 2010 Marital Settlement Agreement
("MSA"). On appeal, Former Husband challenges the portions of

this award granting Former Wife a share of funds earned through Former Husband's ownership of AutoSoft DMS (the "Software"). Those funds derive, in part, from a litigation settlement. The remainder of the funds were paid to Former Husband from several businesses (the "AutoSoft Companies"), including one business that Former Husband at one time legally owned before execution of the MSA. The lower court awarded these funds, totaling $743,330, under Paragraph 20 of the MSA, which grants Former Wife half of all sums Former Husband "receives or becomes entitled to receive" as "distribution[s], dividend[s], or any sums of money which could be characterized as distributions or dividends paid incident to" any legal or equitable ownership interest of the AutoSoft Companies, "any subsidiary[,] or any related or affiliated entity."

Former Husband asserts that none of these funds were, or could be characterized as, a distribution or dividend resulting from ownership in the AutoSoft Companies or any other business entity. Instead, he argues that the funds were income from his ownership of the Software, which is an intangible asset rather than a business entity. He also challenges the lower court's award of attorney's fees to Former Wife as a prevailing party.

## I.

Former Husband and Former Wife married in 1967. They had a child named Brycen Veon. In 1988, during the marriage, Former Husband developed the Software for car dealership accounting. That same year, Former Husband created the first of the AutoSoft Companies—AutoSoft, Inc.—to sell the Software to car dealerships. At this time, Former Husband was the sole shareholder of AutoSoft, Inc. The company also did business under the name AutoSoft, International.

Throughout the next 15 years, operations of AutoSoft, Inc. continued, and some related business entities were created. Independent distributors and sales representatives of the Software created AutoSoft DMS, LLC. Brycen Veon created another entity—Orion Dealer Systems, Inc.—to collect royalties from the sales representatives. Former Husband was never a shareholder in either of these entities.

2

In 2003, Former Husband began transferring his stock in AutoSoft, Inc. to Brycen Veon. By January 2010, all stock in the corporation had been transferred. Both Former Wife and Former Husband always "knew that Brycen Veon would eventually take over the company."

In November 2010, Former Husband and Former Wife divorced, executing a Marital Settlement Agreement ("MSA") that the court incorporated into the final judgment. The MSA included three provisions relevant to this appeal:

- Paragraph 3 indicates the parties' agreement to waive any right to seek compensation from, or any interest in, the salary, income, or awards of the other in the future unless otherwise provided in the MSA.

- Paragraph 20 provides an exception to Paragraph 3. It recites that, as of the date of the MSA's execution, Former Husband holds no legal or equitable ownership interest in the AutoSoft Companies, any of their subsidiaries, or any related or affiliated entity. The paragraph then grants Former Wife half of all sums Former Husband "receives or becomes entitled to receive" as "distribution[s], dividend[s], or any sums of money which could be characterized as distributions or dividends paid incident to" any legal or equitable ownership interest that Former Husband once held in the AutoSoft Companies, "any subsidiary[,] or any related or affiliated entity."

- Paragraph 47 provides for prevailing party attorney's fees in the event of future enforcement actions.

In 2018, Former Wife filed a post-judgment motion to set aside the MSA or, in the alternative, to enforce it. In that motion, she alleged that during their separation, Former Husband had fraudulently transferred his interest in the AutoSoft Companies; that Former Husband had "acquired substantial interests in the businesses . . . that would be indicative of his regained ownership interest"; and that Former Husband had failed to fully disclose

3

marital assets or the value of such assets. Former Wife asked the court to either set aside the MSA or enforce its Paragraph 20.

A two-day bench trial was held. Former Wife presented evidence of a 2014 federal lawsuit filed by Former Husband against AutoSoft, Inc. and Orion Dealer Systems, Inc., asserting an entitlement to $11.2 million in royalties from 2009 to 2012—significantly more than the approximate $2.7 million he had received. The case settled for $225,000 after attorney's fees, in exchange for assignment of the Software's copyright. Former Wife provided expert testimony that both the pre-suit $2.7 million income (or at least whatever portion of that income Former Husband received after execution of the MSA) and the $225,000 settlement amount fell under Paragraph 20 of the MSA, either as royalties or due to an ownership interest in the companies. Former Wife also demonstrated that Former Husband's income was $2.4 million in 2007, $2.2 million in 2008, about $1 million in 2009, $122,000 in 2010, and slightly over $1 million each year in 2011 and 2012.

Former Wife also provided testimony from Brycen Veon's deposition. Brycen's testimony focused on Former Husband's involvement in the AutoSoft Companies after the MSA. Brycen stated that Former Husband had no control over the day-to-day operations of AutoSoft, Inc. or Orion Dealer Systems, Inc., and he did not recall Former Husband having any power to give instructions about the handling of distributions and profits. In fact, Brycen directly testified that Former Husband did not have control and was not happy with the direction in which Brycen was taking the companies. Former Husband attempted to leverage his familiarity with the Software to get his way, but that caused a breakdown in Brycen's and the companies' relationship with Former Husband. Eventually, Brycen fired Former Husband from AutoSoft, Inc., and the companies transitioned to a new software against Former Husband's will. Brycen later closed the companies down.

Former Husband provided undisputed evidence that AutoSoft, Inc. was the only AutoSoft-related company in which he ever possessed a legal ownership interest, and that he had

transferred to Brycen Veon all his legal ownership interest in AutoSoft, Inc. by January 2010.

After trial, the court denied Former Wife's motion to set aside the MSA, but it granted her enforcement request. The court concluded that after execution of the MSA, Former Husband retained a legal or equitable interest in the AutoSoft Companies that required him to split with Former Wife the monies he received from them. Following Former Husband's motion for rehearing, the trial court amended the order to correct some calculations of the award. The trial court ultimately ordered Former Husband to pay over $600,000 in an award under Paragraph 20 for the monies he received after the MSA, nearly $100,000 of the settlement monies, about $3,000 related to a real estate ownership misrepresentation, and about $42,000 in prevailing party attorney's fees and costs.

Former Husband has appealed, challenging each of the awards except the one stemming from the real estate ownership misrepresentation.

## II.

"A marital settlement agreement is a contract." *Crawford v. Barker*, 64 So. 3d 1246, 1251 (Fla. 2011). A trial court's interpretation of a marital settlement agreement, like any other contract, is reviewed de novo. *Taylor v. Taylor*, 183 So. 3d 1121, 1122 (Fla. 5th DCA 2015). In a non-jury trial, findings of fact are reviewed for support by competent, substantial evidence, while legal rulings are reviewed de novo. *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008).

To recap, the trial court ordered three awards to Former Wife that are at issue in this appeal. First, Former Husband was ordered to pay one half of the monies received from the AutoSoft Companies in the years following the MSA. Second, Former Husband was ordered to pay one half of the monies received in the litigation settlement. Third, Former Husband was ordered to pay Former Wife's attorney's fees under a prevailing party provision of the MSA. We will discuss each of these three awards in turn.

5

## III.

It is undisputed that Former Husband received monies from the AutoSoft Companies after entering the MSA, but the parties disagree on the proper characterization of the funds. Former Husband asserts he had no legal or equitable ownership of the companies at any point after entering the MSA, so the funds cannot be characterized as distributions or dividends. Former Wife argues that Former Husband did in fact possess ownership—either legal or equitable—of the AutoSoft Companies, and that the funds he received can be characterized as dividends or distributions.

## A.

Former Husband supports his claim that he had no legal ownership of the AutoSoft Companies after the MSA with undisputed evidence that he transferred the last of his stock in AutoSoft, Inc.—the only AutoSoft-related entity in which he ever had an ownership interest—to Brycen Veon in January of 2010, and he never reacquired stock in the company. This was supported by Former Husband's testimony, Brycen Veon's testimony, and even Former Wife's expert's testimony. Rather than dispute Former Husband's stock transfer, Former Wife instead argues that he retained ownership by virtue of his ownership of the Software, and by retaining direct or de facto control over AutoSoft, Inc. until 2012.

Former Wife's arguments go to *equitable* ownership, not *legal* ownership. Former Husband completely divested his legal title to AutoSoft, Inc. when he transferred the last of his shares to Brycen Veon in January 2010. Former Husband correctly points out that Former Wife conflates legal ownership of the *Software* with legal ownership of the *Companies*. Under the plain terms of the MSA, however, it is Former Husband's ownership of the *Companies*, any of their *subsidiaries*, or "any related or affiliated *entity*"—not his ownership of an *asset*—that counts. The Software is an asset, not a company, subsidiary, or other business entity, so Former Husband's ownership of the Software does not implicate Paragraph 20 of the MSA. Thus, we turn to the question whether

6

Former Husband held an equitable ownership interest in the AutoSoft Companies.

**B.**

Both we and the Florida Supreme Court have recognized the concept of equitable ownership of real property in the context of ad valorem taxation. *See, e.g.*, *Leon Cnty. Educ. Facilities Auth. v. Hartsfield*, 698 So. 2d 526 (Fla. 1997); *First Union Nat'l Bank of Fla. v. Ford*, 636 So. 2d 523 (Fla. 5th DCA 1993). This case, however, presents a question regarding equitable ownership of a business.

Both parties point to *In re Trujillo*, 626 B.R. 59 (Bankr. S.D. Fla. 2019), as the starting point for the equitable ownership analysis in this context. There, the bankruptcy court noted that, "Florida law long has recognized equitable or beneficial interests as a form of property ownership," and "[t]his general rule applies even to ownership interests in intangible things, such as corporate forms or trust arrangements." *Id.* at 73–74 (citing *Acoustic Innovations*, 976 So. 2d at 1142, 1144–45; *Brevard Cnty. v. Ramsey*, 658 So. 2d 1190, 1196 (Fla. 5th DCA 1995)). It went on to note that, "Florida law has no clear standard for determining whether someone is the equitable or beneficial owner of assets . . . nominally owned by another," and cases are "fact specific." *Id.* at 74 (citing *Russell v. Se. Housing, LLC,* 162 So. 3d 262, 268–69 (Fla. 3d DCA 2015); *Towerhouse Condo., Inc. v. Millman*, 475 So. 2d 674 (Fla. 1985)). According to the bankruptcy court, the "determinative facts often overlap with indicia germane to nominee cases." *Id.* Those indicia are: "(i) control over the nominee and the nominee's assets, (ii) family relationships, and (iii) use of [the] nominee's assets." *Id.* (citing *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 729 (11th Cir. 1989)). According to the bankruptcy court, "[t]he most critical factor usually is control," *id.* (citing *Shades Ridge,* 888 F.2d at 728; *Christensen v. Bowen*, 140 So. 3d 498, 501 (Fla. 2014)), and "[a] second factor is who is receiving the benefits of the asset," *id.* (citing *In re Bellassai*, 451 B.R. 594, 601 (Bankr. S.D. Fla. 2011)).

The parties cite several cases as examples of this analytical framework in action. In one bankruptcy case, the former legal

owner of a towing company was found to retain control—and, therefore, equitable ownership—when he sold the company's assets to his girlfriend as his divorce and several default judgments were pending against him, the girlfriend continued to operate the new shell company with little to no knowledge of its operations, and she paid his living expenses out of company accounts. *See In re Bellassai*, 451 B.R. at 596. In a decision by the Third District Court of Appeal, the Navy was found to equitably own several housing improvements nominally owned by a for-profit corporation, based on the allocation of property rights between the Navy and the other entities. *See Russell*, 162 So. 3d at 268–69. There, the court noted several aspects of the Navy's control—such as access to the improvements, rental of the units, oversight of construction, and limiting usage to Navy purposes—and further noted that the Navy benefitted from revenues and received most of the profits, while also receiving the improvements themselves at the end of the lease. *See id.* at 269–70. In a decision by the First District Court of Appeal, a university was found to equitably own a student housing property despite legal ownership by a private company. *See Crapo v. Provident Grp.—Continuum Props., LLC*, 238 So. 3d 869 (Fla. 1st DCA 2018). There, the court pointed to the university's control over planning, operations, and rental terms, the university's entitlement to legal title without payment upon satisfaction of the project's repayment obligations, and the direct and substantial benefit to the university of student housing, among other factors. *See id.* at 875.

We agree that equitable ownership is a fact-specific inquiry, and we do not today purport to establish a comprehensive test for equitable ownership of a business. However, we do find the factors to which the parties direct our attention—control, family relationships, and receipt of benefits—appropriate for analyzing this appeal, with control being the most critical factor. Our discussion of the three factors follows.

### 1.

At first blush, the record evidence regarding Former Husband's control over the AutoSoft Companies might appear mixed. Brycen Veon testified in his deposition that Former Husband had no control over day-to-day operations, and he could

8

not recall Former Husband providing instructions about how distributions and profits would be handled after transferring away his legal ownership. Yet in an interrogatory for the federal litigation between Former Husband and the AutoSoft Companies, Brycen stated that until 2012, Former Husband had exercised direct or de facto control over AutoSoft, Inc. and Orion Dealer Systems, Inc. In addition, Former Husband remained on the payroll in 2010 and for some years after.

One key fact, however, definitively establishes that Former Husband lacked the kind of control necessary to indicate equitable ownership: the 2014 litigation itself. It is undisputed that Former Husband brought a lawsuit against the Companies to attempt to recover monies that he alleged were rightfully owed to him, and that the suit settled for substantially less than his claims. Had Former Husband wielded any appreciable degree of control over the Companies, he would not have needed to file or settle his suit.

Even putting aside the federal litigation, none of the record evidence demonstrates the type or level of control that courts have found to signal equitable ownership. Unlike in *In re Bellassai*, Former Husband did not transfer legal title to someone who had no involvement in, or knowledge of, company operations. Unlike in *Russell* and *Crapo*, the AutoSoft Companies were not operated for Former Husband's benefit, Former Husband did not retain control over day-to-day decisions, and there was no arrangement for Former Husband to reacquire a legal ownership interest without payment. Indeed, Brycen Veon testified that Former Husband lacked power over the handling of profits and dividends, and he was not happy with the direction in which Brycen was taking the AutoSoft Companies, causing a breakdown in the relationship that culminated in Former Husband's firing and the Companies' transition to a different software program.

On this record, there is no competent, substantial evidence that Former Husband retained sufficient control to indicate equitable ownership of the AutoSoft Companies. *See In re Trujillo*, 626 B.R. at 74 (noting that "'active' or 'substantial' control" is required (quoting *Shades Ridge*, 888 F.2d at 728)).

**2.**

9

The family-relationship factor weighs only marginally in favor of a finding of equitable ownership. During the relevant period, Brycen Veon—Former Husband's son—was the legal owner. However, given the evidence that Brycen operated the AutoSoft Companies independently of—indeed, contrary to—Former Husband's wishes, we give only slight weight to this factor. The evidence shows that Brycen transitioned away from Former Husband's Software, fired Former Husband from AutoSoft, Inc., and steered the Companies during Former Husband's 2014 federal lawsuit against them.

Had the evidence showed Brycen to be an unsophisticated, disinterested, or compliant family member who continued to run the business as Former Husband desired, we might accord this factor more weight. But on this record, we do not think that this factor is strongly indicative of equitable ownership.

**3.**

After executing the MSA in 2010, Former Husband undeniably received monies from the AutoSoft Companies. The question, however, is whether those funds derived from his relationship with the Companies, or instead from his ownership of the Software. On that score, Former Wife does not deny that the funds and settlement proceeds that Former Husband received could be payments related to ownership of the Software rather than ownership of the Companies.

The trial court found that "Former Husband continued as an employee until 2013 to be provided health insurance," but it determined that his income derived from his ownership of the Software when it found that he "failed to disclose the income related to said software." Given the court's finding that the income was related to Former Husband's ownership of the Software rather than any share in the business profits—a finding supported by competent, substantial evidence—this factor weighs against equitable ownership.

\* \* \*

10

Having weighed the relevant factors, with control as the most significant factor, we conclude that Former Husband did not have equitable ownership of the AutoSoft Companies after execution of the MSA in 2010. Instead, the Companies were both legally and equitably owned by Brycen Veon and by independent sales representatives and distributors, who pursued their own interests rather than Former Husband's.

## C.

Because Former Husband, during the relevant timeframe, held neither legal nor equitable ownership of the AutoSoft Companies, the funds he received from them cannot be characterized as distributions or dividends. Florida and federal law recognize that a distribution or dividend involves a transfer of money or other property from a corporation or limited liability company to its shareholders or members (*i.e.*, owners). *See* § 607.01401(18), Fla. Stat. (2021); § 605.0102(17), Fla. Stat. (2021); 26 U.S.C. § 316(a)(1). Critically, Paragraph 20 of the MSA adopts this common legal meaning, specifying that it governs distributions and dividends "paid incident to" any legal or equitable ownership interest of the AutoSoft Companies, their subsidiaries, or any related or affiliated entity. Because Former Husband had neither legal nor equitable ownership of the AutoSoft Companies, he could not have received a distribution or dividend in the years following execution of the MSA. This conclusion follows from the plain text of Paragraph 20 of the MSA. Former Wife's arguments to the contrary misapprehend that Former Husband received the funds due to his ownership of the *Software*—which is an asset, not a business entity—rather than any ownership interest in the *Companies*.

For the foregoing reasons, we will reverse the trial court's award to Former Wife of one half of the post-MSA monies Former Husband received from the AutoSoft Companies.

## IV.

Former Husband argues that the trial court improperly granted Former Wife a share of the settlement payment that Former Husband received when he terminated his federal lawsuit.

11

Like the previously discussed award, this award was granted under Paragraph 20 of the MSA. The settlement payment resolved Former Husband's claim that the Companies failed to pay royalties that they owed to him. Those royalties were for use of the Software he created and owned, not for any ownership in the Companies.

Because Former Husband did not have legal or equitable ownership of the AutoSoft Companies, the money he received from the settlement could not fall within the terms of Paragraph 20 of the MSA. In short, they cannot be characterized as a distribution or dividend incident to an ownership interest in the Companies, any subsidiary, or any related or affiliated entity. Accordingly, we will reverse the trial court's award to Former Wife of one half of the monies Former Husband received in the settlement of the federal litigation.

## V.

Former Wife asserts that Former Husband waived any argument against the attorney's fees award by failing to attack the award in his initial brief. It is true that failure to address an issue in the initial brief generally waives it. *See Hagood v. Wells Fargo, N.A.*, 112 So. 3d 770, 772 (Fla. 5th DCA 2013). However, this general rule does not apply to prevailing party fees and costs where the appellant establishes that he or she is the prevailing party. As the First District Court of Appeal recognized under like circumstances where an appellant did not specifically challenge prevailing party fees in its brief, "[o]nce a final judgment is reversed and remanded by an appellate court, there can be no prevailing party for purposes of an award of prevailing party attorney's fees. Consequently, an award of attorney's fees and costs predicated on a reversed or vacated final judgment also must be reversed." *So. Nat'l Track Servs., Inc. v. Gilley*, 152 So. 3d 13, 19 (Fla. 1st DCA 2014) (citing *Marty v. Bainter*, 727 So. 2d 1124, 1125 (Fla. 1st DCA 1999)); *see also Great Am. Ins. Cos. v. Souza*, 855 So. 2d 187, 189 (Fla. 4th DCA 2003) ("Additionally, because this opinion results in the reversal of the summary judgment in favor of the Authority, it can no longer be considered a prevailing party entitled to recover attorney's fees from Great American.").

However, we note that Former Wife's motion to enforce sought several forms of relief, including an award for the real estate-related misrepresentation, which award Former Husband does not challenge in this appeal. "[T]he party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992). Where a party succeeds on some, but not all, of her claims, the trial court must determine, in the first instance, whether she is the prevailing party (and, indeed, whether there is a prevailing party at all). *See Trytek v. Gayle Indus., Inc.*, 3 So. 3d 1194, 1203–04 & nn.12–13 (Fla. 2009); *Torruella v. Nationstar Mortg., LLC*, 308 So. 3d 674, 675–76 (Fla. 5th DCA 2020); *Sorrentino v. River Run Condo. Ass'n*, 925 So. 2d 1060, 1065 (Fla. 5th DCA 2006); *Brevard Cnty. Fair Ass'n v. Cocoa Expo, Inc.*, 832 So. 2d 147, 151 (Fla. 5th DCA 2002). Accordingly, we will vacate the prevailing party attorney's fees award for the trial court to consider, in the first instance, whether Former Wife is entitled to any attorney's fees award under Paragraph 47 of the MSA.

## VI.

For the foregoing reasons, we reverse the trial court's awards to Former Wife of half of the post-MSA monies Former Husband received from the AutoSoft Companies and half of the monies Former Husband received in his litigation settlement, and we vacate the trial court's attorney's fees award to Former Wife. The award for the real estate ownership misrepresentation was unchallenged, so that portion of the award is affirmed.

AFFIRMED in part; REVERSED in part; VACATED in part; and REMANDED for further proceedings.

EDWARDS, C.J., and LAMBERT, J., concur.

13

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____