# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2966

_____

GATOR COIN II, INC., a Florida
Corporation,

     Appellant,

     v.

FLORIDA DEPARTMENT OF
BUSINESS AND PROFESSIONAL
REGULATION, DIVISION OF
ALCOHOLIC BEVERAGES AND
TOBACCO, an agency of the State
of Florida,

     Appellee.

_____

No. 1D17-3705

_____

BLUE SKY GAMES, LLC,

     Appellant,

     v.

FLORIDA DEPARTMENT OF
BUSINESS AND PROFESSIONAL
REGULATION, DIVISION OF
ALCOHOLIC BEVERAGES AND
TOBACCO, an agency of the State
of Florida, and GATOR COIN II,
INC., a Florida Corporation,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
John C. Cooper, Judge.

August 30, 2018

LEWIS, J.

In these consolidated appeals, Appellants, Gator Coin II, Inc. (Gator Coin) and Blue Sky Games, LLC (Blue Sky Games), appeal the trial court's Order on Motion for Rehearing and Final Declaratory Judgment, challenging its determination that Blue Sky Games Version 67 (Version 67) is a "slot machine or device" as that term is defined in section 849.16(1), Florida Statutes (2015). For the following reasons, we agree with the trial court's conclusion and, therefore, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Blue Sky Games developed Version 67 with the goal of making it a no-chance game in order to avoid the applicability of Florida's gambling statutes, and it licensed to Gator Coin the right to use it. In turn, Gator Coin leased Version 67 to "adulthood places," such as bars. After Appellee, the Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco, issued official notices to two of Gator Coin's machine lessees, notifying them that the machines may be considered illegal slot machines under section 849.16 and directing them to remove the machines from their premises, Gator Coin filed against Appellee a Complaint for Declaratory Judgment, seeking a declaration that Version 67 is not an illegal slot machine pursuant to sections 849.15 and 849.16, Florida Statutes (2015), and is instead a legal amusement machine. Blue Sky Games was permitted to intervene in the action.

At the non-jury trial, the undisputed evidence established that Version 67 is a profitable game that depicts traditional slot machine symbols, such as reels; it takes $1 to $20 bills; and the amount of return to the player varies by the amount of money played. Version 67 has a mandatory preview feature that displays the outcome of the game selected before the insertion of any money and before the play button appears. The preview displays the actual result of the game 100% of the time, and players are not financially obligated to play—if they dislike the previewed result, they may cash out any time before pressing the play button, they may select a different play level within the same game theme, or they may choose a different game theme. Version 67 has a preset win/loss ratio, and the outcome that is displayed in the preview is generated by the machine with the use of a random number generator (RNG). When the first game is played, the outcome of the next game is automatically generated by the RNG and is stored in memory, and that outcome is displayed when the player presses preview for the next game. There is nothing a player can do to change the outcome that is randomly generated by the machine from among millions of potential outcomes.

The only dispute at trial was whether Version 67 involves skill or any element of chance or any other outcome unpredictable by the user so as to fall under the purview of section 849.16(1). Appellants contended that Version 67 does not involve any skill and that the mandatory preview feature eliminates all chance and unpredictability. Following rehearing, the trial court vacated its original declaratory judgment in Appellants' favor and concluded that Version 67 is an illegal slot machine pursuant to section 849.16(1). The trial court found that Version 67 is presumed to be a prohibited slot machine because it falls within the parameters of section 849.16(3) and the evidence did not overcome that presumption. The trial court determined that Version 67 is not a game of skill, but it may award a player something of value by reason of an element of chance inherent in the machine because it has a preset win/loss ratio and determines the outcome randomly with the use of an RNG, and it may award a player something of value by reason of an outcome unpredictable by the player at the time the outcome is determined and before it is displayed. Additionally, the trial court recognized that each game unlocks the opportunity to play subsequent games, whose outcomes are

3

unpredictable at the time the first game is played, and that the preview feature seeks to circumvent gambling prohibitions. These appeals followed.

## ANALYSIS

On review of a declaratory judgment, we defer to the trial court's factual findings if supported by competent, substantial evidence, but review conclusions of law de novo. *Crapo v. Provident Grp.-Continuum Props., L.L.C.*, 238 So. 3d 869, 874 (Fla. 1st DCA 2018). We review questions of statutory construction de novo. *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 8 (Fla. 2012). The polestar of statutory construction is legislative intent. *Id.* To discern legislative intent, we must first look to the plain and obvious meaning of the statute's text, which may be discerned from a dictionary. *Id.* at 9. If the statutory language is clear and unambiguous, we must apply that unequivocal meaning and may not resort to the rules of statutory construction. *Id.* We must give full effect to all statutory provisions and avoid readings that would render a part of a statute meaningless; additionally, we may not construe an unambiguous statute in a way that would extend, modify, or limit its express terms or its reasonable and obvious implications. *Bennett v. St. Vincent's Med. Ctr., Inc.*, 71 So. 3d 828, 838 (Fla. 2011).

Chapter 849, Florida Statutes, governs gambling and makes it unlawful to manufacture, own, store, keep, possess, sell, rent, or lease any "slot machine or device." § 849.15(1), Fla. Stat. (2015). In section 849.16, the term "slot machine or device" is defined and a rebuttable presumption is created as follows:

> (1) As used in this chapter, the term "slot machine or device" means any machine or device or system or network of devices that is adapted for use in such a way that, upon activation, which may be achieved by, but is not limited to, the insertion of any piece of money, coin, account number, code, or other object or information, such device or system is directly or indirectly caused to operate or may be operated and if the user, **whether by application of skill or by reason of any element of**

4

**chance or any other outcome unpredictable by the user**, may:

(a) Receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value or which may be given in trade; or

(b) Secure additional chances or rights to use such machine, apparatus, or device, even though the device or system may be available for free play or, in addition to any element of chance or unpredictable outcome of such operation, may also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value. **The term "slot machine or device" includes, but is not limited to, devices regulated as slot machines pursuant to chapter 551**.

. . . .

(3) There is a rebuttable presumption that a device, system, or network is a prohibited slot machine or device if it is used to display images of games of chance and is part of a scheme involving any payment or donation of money or its equivalent and awarding anything of value.

§ 849.16, Fla. Stat. (2015) (emphasis added).[1]

Chapter 551 governs slot machines, and the term "slot machine" is defined for the purpose of that chapter as follows:

---

[1] Prior to the latest amendment to section 849.16, in 2013, the statutory definition of slot machine or device did not include the application of skill and there was no statutory presumption. *See* § 849.16, Fla. Stat. (1997); *see also* Ch. 13-2, § 4, Laws of Fla. (2013).

[A]ny mechanical or electrical contrivance, terminal that may or may not be capable of downloading slot games from a central server system, machine, or other device that, upon insertion of a coin, bill, ticket, token, or similar object or upon payment of any consideration whatsoever, including the use of any electronic payment system except a credit card or debit card, is available to play or operate, the play or operation of which, **whether by reason of skill or application of the element of chance or both**, may deliver or entitle the person or persons playing or operating the contrivance, terminal, machine, or other device to receive cash, billets, tickets, tokens, or electronic credits to be exchanged for cash or to receive merchandise or anything of value whatsoever, whether the payoff is made automatically from the machine or manually. . . . A slot machine is not a "coin-operated amusement machine" as defined in s. 212.02(24) or an amusement game or machine as described in s. 546.10 . . . .

§ 551.102(8), Fla. Stat. (2015) (emphasis added).[2]

---

[2] During oral argument, Appellants properly conceded that Version 67 cannot be deemed an "amusement game or machine" as defined in section 546.10. *See* § 546.10(3), Fla. Stat. (2015) (defining "amusement game or machine" as "a game or machine operated only for the bona fide entertainment of the general public which a person activates by inserting or using currency or a coin, card, coupon, slug, token, or similar device, and by the application of skill, with no material element of chance inherent in the game or machine, the person playing or operating the game or machine controls the outcome of the game"; excluding from the definition games that use or depict slot machine reels or symbols and games in which the player does not control the outcome through skill or where the outcome is determined by factors not visible, known, or predictable to the player; and defining "material element of chance inherent in the game or machine" in part as "[t]he possibility of the player succeeding at the game or accomplishing the player's task is determined by the number or ratio of prior wins or prior losses

Pursuant to case law, in order for a machine to be an illegal slot machine, the element of chance or unpredictability must be inherent in the operation of the machine itself. In *Deeb v. Stoutamire*, the Florida Supreme Court explained that the characteristics that differentiate an innocent machine from a guilty one are "any element of chance or [] other outcome . . . unpredictable by [the player]," and concluded that "inasmuch as the machine itself is on trial," "it should not be condemned unless" the element of chance or unpredictability is inherent in its operation. 53 So. 2d 873, 874-75 (Fla. 1951) (en banc) (applying section 849.16, Florida Statutes (1941), which did not prohibit games involving skill, and concluding that a miniature bowling alley that did nothing except register the score that depended entirely on the player's skill was not an illegal slot machine). It is the operation of the machine, not the player's knowledge, that is determinative: "the element of unpredictability is not supplied because a player may not be sure what score he can accomplish, but that it must be inherent in the machine." *Id.* at 875.

In accordance with the rationale of *Deeb*, the Fourth District in *State, Department of Business & Professional Regulation, Division of Alcoholic Beverages & Tobacco v. Broward Vending, Inc.*, held that the machine at issue there was a prohibited gambling device because the element of chance was inherent in the machine itself given that it was set to record a certain win/loss ratio. 696 So. 2d 851, 851-52 (Fla. 4th DCA 1997); *see also Hernandez v. Graves*, 4 So. 2d 113, 114 (Fla. 1941) (en banc) (concluding that the machine at issue was a slot machine because its operation involved an element of chance; specifically, "its operation as the result of the insertion of a coin involves an element of chance for the operator to win a stated cash prize if he correctly answers an unknown or unpredictable question in twenty seconds after it is disclosed by the machine, or to lose the coin inserted in the machine if the player does not, within twenty seconds after it is shown, correctly answer an unpredictable

---

of players playing the game" or "[a] computer-based or mechanical random number generator or other factor that is not discernible, known, or predictable by the player determines the outcome or winner of the game").

question posed by the machine and not known to, or controlled by, the player"); *In re Forty-Seven Video Redemption Games*, 799 So. 2d 221, 222 (Fla. 2d DCA 2001) (deciding whether certain "machines operated 'by reason of any element of chance' so as to fall within the definition of a slot machine in section 849.16" and finding that "the testimony provided a sufficient probability to warrant a reasonable belief that there was an element of chance inherent in the Florida Skill machines").

Turning to the present cases, the resolution of the issue of whether Version 67 is an illegal slot machine under section 849.16(1) turns on whether the user may receive something of value "by reason of any element of chance or any other outcome unpredictable by the user." *See* § 849.16(1), Fla. Stat. The element of chance or unpredictability must be inherent in the machine itself. *See Deeb*, 53 So. 2d at 874-75; *Broward Vending, Inc.*, 696 So. 2d at 851-52.

On appeal, the parties do not dispute that the remaining statutory elements of consideration and award of something of value are present in Version 67, that the game does not involve skill, or that the statutory presumption that the game is a slot machine applies. It is further undisputed that Version 67 has a mandatory preview feature that accurately displays the outcome of the game at hand before that game is played and before money for that game is inserted. However, it is also undisputed that Version 67 displays images of games of chance, that it has a preset win/loss ratio, that it utilizes an RNG to randomly select the outcome from a pool of millions of potential outcomes, and that the outcome of Game 2 is unknown at the time Game 1 is played.

Appellants' position is that the preview feature removes any element of chance or unpredictability because the player knows the outcome of the game. In so arguing, Appellants improperly focus on the player's knowledge instead of the machine's operation and seek to define the game as what happens after the player presses the play button, *i.e.*, the flashing lights and sounds, thereby ignoring the operation of the machine up to the point.

We hold that the trial court was correct in determining that Version 67 is a slot machine because the element of chance is inherent in it given that it has a preset win/loss ratio, *see Broward*

*Vending, Inc.*, 696 So. 2d at 851-52, and that the game outcomes are determined by the machine by chance, via an RNG, and there is nothing the user can do to affect the outcomes. Furthermore, Version 67 is a slot machine for the additional and independent reason that also inherent in it is an outcome unpredictable by the user. While it is true that the user is advised of the outcome of the game at hand ahead of time through the preview feature, the user cannot predict that outcome until it is randomly generated and then displayed by the machine. Nor can the user predict the outcome of Game 2 while playing Game 1. As the trial court recognized, section 849.16's definition of slot machine is satisfied regardless of when the outcome is generated or when it is made known to the user, and nothing in the statute requires that each game be analyzed in isolation without considering its relationship to subsequent games.

Therefore, pursuant to the plain language of section 849.16(1) and well-established case law, Version 67 is an illegal slot machine. Accordingly, we affirm the trial court's judgment.

AFFIRMED.

WOLF and RAY, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Wm. J. Sheppard, Elizabeth L. White, Bryan E. DeMaggio, Jesse B. Wilkison, and Camille E. Sheppard of Sheppard, White, Kachergus & DeMaggio, P.A., Jacksonville, for Appellant Gator Coin II, Inc.

Robert E. Turffs of Robert E. Turffs, P.A., Sarasota, for Appellant Blue Sky Games, LLC.

Christine Davis Graves, Martha Harrell Chumbler, and James Parker-Flynn of Carlton Fields, Tallahassee, for Amicus Curiae Cowboy Gaming, LLC d/b/a Pace-O-Matic, in support of Gator Coin, II, Inc., and Blue Sky Games, LLC.

Jason L. Maine, General Counsel; Daniel J. McGinn and Beth A. Miller, Florida Department of Business and Professional Regulation, Tallahassee, for Appellee.

Barry Richard, Greenberg Traurig, P.A., Tallahassee, for Amicus Curiae Seminole Tribe of Florida, in support of Appellee.